IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CV-112-BO

| | |
|---|---|
| KENNETH WASHINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     O R D E R |
| | ) |
| UNITED STATES, DEPARTMENT OF THE NAVY, | ) |
| | ) |
| Defendant. | ) |

This cause comes before the Court on defendant's motion to stay proceedings. [DE 11]. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, defendant's motion to stay proceedings [DE 11] is denied.

## BACKGROUND

Plaintiff initiated this action in June 2019. [DE 1]. Plaintiff alleges that he served in the U.S. Marine Corps from November 1978 to January 1984. [DE 13, ¶ 12]. He alleges that he was stationed at Camp Lejeune, in Jacksonville, North Carolina, from 1979 to 1981 and from 1983 to 1984. *Id.* ¶ 13. While stationed at Camp Lejeune, plaintiff and his wife, Ms. Rhoda Renee Bell, consumed drinking water that plaintiff alleges was contaminated. *Id.* ¶¶ 14, 19. In September 1980 and March 1981, plaintiff's wife had "two spontaneous abortions, also known as miscarriages." *Id.* ¶ 15. Additionally, in February 1982, plaintiff's son was born at Pitt County Memorial Hospital, but survived for only 32 minutes. *Id.* ¶¶ 16–18.

In May 2010, if not earlier plaintiff filed an administrative claim to the Department of the Navy, alleging that he and his family were exposed to contaminated drinking water while at Camp

Lejeune and requesting $100 million for the wrongful death of his son. *Id.* ¶¶ 22–39. Plaintiff's administrative claim remained pending until January 2019, at which time the claim was denied. *Id.* ¶ 40. Plaintiff then initiated this action.

In July 2019, defendant moved to stay proceedings pending a decision by the Judicial Panel on Multidistrict Litigation (JPML) on the government's motion to transfer a half-dozen cases—including this one—pursuant to 28 U.S.C. § 1407. [DE 11]. Plaintiff has responded in opposition to a stay. [DE 14].

## DISCUSSION

A district court has inherent authority to manage its docket to promote "economy of time and effort for itself, counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). When determining whether to stay proceedings, a district court generally considers "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *Johnson v. DePuy Orthopaedics, Inc.*, No. 3:12-CV-2274-JFA, 2012 WL 4538642, at *2 (D.S.C. Oct. 1, 2012) (citation omitted). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

Having considered the relevant factors, the Court concludes that a stay of this matter is not warranted. Defendant requests a stay while the JPML considers a motion to transfer this case, and others, to the Northern District of Georgia. But the filing of a transfer motion under 28 U.S.C. § 1407 before the JPML does not deprive this Court of jurisdiction. *See In re Air Crash Disaster at Paris, France*, 376 F. Supp. 887, 888 (J.P.M.L. 1974) (citation omitted) ("The mere pendency of a motion before the Panel does not affect or suspend orders and discovery proceedings in the

transferor court and does not in any way limit the jurisdiction of the transferor court to rule upon matters properly presented to it for decision."). Here, to the extent that the interests of judicial economy favor defendant, those interests are slight given the posture of this action and the uncertainty of a possible transfer to the Northern District of Georgia. Additionally, the hardship imposed on the government by having to litigate in the Eastern District of North Carolina, which encompasses Camp LeJeune and where the operative events in this action allegedly occurred, rather than in the Northern District of Georgia (if, and only if, the transfer motion is granted by the JPML), is minimal.

The government's interests and the interests of judicial economy are outweighed, in any event, by the prejudice that plaintiff would suffer if the action were to be stayed. Although the government argues that "a stay will not present any significant prejudice to the non-moving party because this case is in its early stages," plaintiff has been pursuing his claims for at least nine years. [DE 11, p. 7]. It is unclear how quickly the JPML could grant the transfer motion, but a hearing has been set for September 26, 2019. *See* Upcoming MDL Hearing Sessions, https://www.jpml.uscourts.gov/hearing-information, (last visited August 23, 2019). Plaintiff has a significant interest in litigating his claims in his chosen forum, where Camp Lejeune is located and where the operative events occurred, until the JMPL determines otherwise.

Accordingly, the Court finds that defendant has not demonstrated, by clear and convincing circumstances, that its interests and the interests of judicial economy outweigh the potential harm to plaintiff if the proceedings are stayed. Thus, the Court, in its discretion, declines to stay the proceedings pending the JPML's resolution of the pending § 1407 transfer motion. Defendant's motion to stay proceedings is denied.

3

CONCLUSION

For the above reasons, defendant's motion to stay proceedings [DE 11] is denied.

SO ORDERED, this 26 day of August, 2019.

*Terrence Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE