IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-cv-00112-BO

| | |
|---|---|
| KENNETH WASHINGTON, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) UNITED STATES' MEMORANDUM IN<br>) SUPPORT OF MOTION TO DISMISS FOR |
| DEPARTMENT OF THE NAVY, | ) LACK OF SUBJECT-MATTER<br>) JURISDICTION; 12(b)(1). |
| Defendant. | )<br>)<br>)<br>) |

## INTRODUCTION

The Government moves to dismiss the Federal Tort Claims Act ("FTCA") claims, 28 U.S.C. §§ 1346(b), 2671-2680, brought by Plaintiff Kenneth Washington under Fed. R. Civ. P. 12(b)(1) because this Court lacks jurisdiction to consider them for three reasons. First, Plaintiff's FTCA wrongful death claims challenging governmental conduct related to the water supply at Camp Lejeune are not properly before this Court because Plaintiff has filed suit in his individual capacity and has not alleged that he is the personal representative or collector of the decedents, a requirement under the North Carolina Wrongful Death Act. N.C. Gen. Stat. § 28A-18-2. Second, the FTCA does not waive sovereign immunity for a lawsuit brought against the Department of the Navy. 28 U.S.C. § 2679(a). Third, Plaintiff's Amended Complaint has failed to allege claims that are outside of the discretionary function exception to the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(a). Thus, the Amended Complaint must be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## PLAINTIFF'S ALLEGATIONS

Plaintiff initiated this FTCA wrongful death lawsuit[1] on June 21, 2019, and amended his Complaint on August 2, 2019. Pl. Compl. [Dkt. No. 1]; Pl. Am. Compl. [Dkt No. 13]. Plaintiff brings this lawsuit on behalf of his deceased child and two unborn children, against the Department of the Navy, pertaining to governmental conduct at Camp Lejeune, NC. Pl. Am. Compl. ¶¶ 76, 81. Plaintiff alleges that he is the surviving biological father of the decedent and both unborn children. *Id.* ¶¶ 2-3. He alleges that he served in the U.S. Marine Corps from November 1978 to January 1984. *Id.* ¶12. In addition, he alleges that he was stationed at Camp Lejeune from 1979 to 1981 and from 1983 to 1984. *Id.* ¶ 13. While stationed at Camp Lejeune, Plaintiff and his wife, Ms. Rhoda Renee Bell, consumed drinking water that Plaintiff alleges was contaminated. *Id.* ¶¶ 11, 14. Plaintiff alleges that in September 1980 and March 1981, his wife had "two spontaneous abortions, also known as miscarriages." *Id.* ¶ 15. Plaintiff alleges that his son was born in February 1982, "but survived for only 32 minutes." *Id.* ¶ 16.

In his Amended Complaint, Plaintiff states, "[w]arnings of Camp Lejeune's drinking water contamination first surfaced in 1980." *Id.* ¶ 45. In addition, Plaintiff alleges that, during the 1980s, various reports carried warnings about contaminated water and showed the presence of contaminants at Camp Lejeune. *Id.* ¶¶ 45-55. Plaintiff further contends that "[t]he United States Marine Corps failed to act quickly or forcefully enough in the 1980s to close down water supply wells," that "leadership at the United States Navy and Camp Lejeune failed to follow

---

[1] Plaintiff brings his wrongful death claims on behalf of his deceased child and two unborn children under the North Carolina Wrongful Death Act, which creates a right of action in a personal representative to enforce a decedent's claim for any personal injury that caused the death. N.C. Gen. Stat. § 28A-18-2. Plaintiff incorrectly cites N.C. Gen. Stat. §§ 28-18-12 on page 2 of his Amended Complaint as the basis for his wrongful death claims. The correct reference is N.C. Gen. Stat. § 28A-18-2.

their own naval potable water regulation ["Bureau of Medicine"] BUMED 6240.3B and 6240.3C," and that "leadership at the United States Navy and Camp Lejeune failed to follow Base Order 5100.13b." *Id.* ¶¶ 57-59. Plaintiff asserts various negligence claims against the Department of the Navy and states, "[b]ut for the failure of officials at Camp Lejeune and the Department of the Navy to follow regulations, base orders and act on the water contamination information, the Plaintiff would not have suffered injuries." *Id.* ¶¶ 62, 73-76.

Plaintiff alleges that he filed a Standard Form 95 on March 19, 2010, with the Department of the Navy, and the form was stamped received by the Navy in "May 2010." *Id.* ¶¶ 32-33. Plaintiff alleges that his Standard Form 95 alleged that "while stationed at Camp Lejeune, NC himself and his family were exposed to contaminated drinking water that contained Trichloroethylene (TCE) and Tetrachloroethylene (PCE)." *Id.* ¶ 36. The amount of Plaintiff's claim alleged on his Standard 95 Form was 100 million dollars and the cause of action was for "Wrongful Death." *Id.* ¶ 37. Plaintiff alleges that on January 24, 2019, "he received a letter from the Department of the Navy informing him that his claim was considered under the FTCA and that it did not meet the requirements for compensation." *Id.* ¶ 40.

## STANDARD OF REVIEW

**I.      Motion To Dismiss, Fed. R. Civ. P. 12(b)(1)**

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move the Court to dismiss claims for lack of subject-matter jurisdiction. Jurisdiction is the power to make law, and the Court must be assured of its subject-matter jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for a Better Environ.,* 523 U.S. 83, 93-94 (1998) (jurisdiction is a threshold matter that is inflexible and without exception).

When deciding a Rule 12(b)(1) motion, a court must distinguish between a facial or factual challenge to jurisdiction. Here, the Government asserts a facial challenge to the Court's

3

jurisdiction over Plaintiff's FTCA claims. When a facial challenge is made, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration" and "the facts alleged in the complaint are taken as true. . ." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "In pursuing a facial challenge, the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton v. National Board of Examiners in Optometry, Inc.*, 892 F.3d 613, 621 n.7 (4th Cir. 2018)(citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)). "In any case in federal court, the plaintiff has the burden of proving that subject matter jurisdiction exists. *Viault v. United States*, 609 F.Supp.2d 518, 524 (E.D.N.C. 2009)(citing *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d 765, 768 (4th Cir. 1991)).

## II.     The FTCA

It is axiomatic that sovereign immunity shields the United States from suit without its consent. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides a limited waiver of the United States' sovereign immunity to tort suit. 28 U.S.C. §§1346(b), 2671-2680. The terms and conditions of that waiver limit the jurisdiction of federal courts to adjudicate tort suits against the government. *See United States v. Mottaz*, 476 U.S. 834, 841 (1986) ("When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction.")(citation omitted). The Supreme Court has held that waivers of sovereign immunity, and conditions on any waiver, must be "construed strictly in favor of the sovereign." *United States Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (addressing waivers of sovereign immunity in federal environmental statutes) (citations omitted).

The FTCA's waiver of sovereign immunity has several limitations, including three relevant to Plaintiff's Amended Complaint. First, a plaintiff only has a cause of action against

the United States if a plaintiff would also have a state law cause of action against a private person in like circumstances. 28 U.S.C. §1346(b)(1); *Corrigan v. United States*, 815 F.2d 954, 955 (4th Cir. 1987). In a FTCA wrongful death lawsuit, the law of the state where the challenged act or omission occurred is applied to determine whether there is an underlying claim. 28 U.S.C. §1346(b)(1); *see also Miller v. United States*, 932 F.2d 301, 302-03 (4th Cir. 1991). Second, there is a statutory requirement that the United States be sued under its own name, 28 U.S.C. § 2679(a). Finally, the FTCA contains a jurisdictional bar to suit, the discretionary function exception, 28 U.S.C. § 2680(a), under which the United States cannot be sued for discretionary, policy-based conduct.

## ARGUMENT

For three reasons explained below, the Court should dismiss Plaintiff's tort claims against the Department of the Navy. First, this Court lacks subject-matter jurisdiction over these claims because Plaintiff has not alleged that he is the personal representative or collector of the decedents as required under the North Carolina Wrongful Death Act. N.C. Gen. Stat. § 28A-18-2. Second, Plaintiff has failed to name the United States as the Defendant in this case. 28 U.S.C. § 2679(a). Third, the discretionary function exception bars Plaintiff's claims in this matter because he has not alleged that the Government violated a specific and mandatory directive or that the governmental conduct he challenges is not susceptible to policy considerations. 28 U.S.C. § 2680(a). Accordingly, the Court should dismiss this FTCA lawsuit.

### I. <u>The Plaintiff Has Failed to Establish that he is Authorized to Bring Suit Under the North Carolina Wrongful Death Act</u>

Plaintiff alleges in his Amended Complaint that the challenged conduct occurred at Camp Lejeune in North Carolina, Pl. Am. Compl. ¶ 9, and as such, the law of North Carolina applies to determine the viability of Plaintiff's FTCA wrongful death claims against the Government. 28

5

U.S.C. § 1346(b)(1). Plaintiff brings this wrongful death lawsuit on behalf of his deceased children under the North Carolina Wrongful Death Act. Pl. Am. Compl. p. 2. The North Carolina Wrongful Death Act creates a right of action in a personal representative to enforce a decedent's claim for any personal injury that caused the decedent's death. N.C. Gen. Stat. § 28A-18-2(a) ("When the death of a person is caused by a wrongful act, neglect or default of another, such as would, if the injured person had lived, have entitled the injured person to an action for damages therefor, the person or corporation that would have been so liable . . . shall be liable to an action for damages, to be brought by the personal representative or collector of the decedent."). Accordingly, any claims asserted on a decedent's behalf under the North Carolina statute must be brought by a "personal representative" or "collector of the decedent." *Id.*; *see also Estate of Tallman ex rel. Tallman v. City of Gastonia*, 682 S.E.2d 428, 430, 200 N.C. App. 13, 15 (N.C. App., 2009)(citing *Westinghouse v. Hair*, 107 N.C. App. 106, 107, 418 S.E.2d 532, 533 (1992))("An action for wrongful death is a creature of statute and only can be brought by the personal representative or collector of the decedent.")(citations omitted).

Plaintiff has not alleged in his Amended Complaint that he is the personal representative or the collector of the decedents on whose behalf he files suit. He thus, has not properly brought his claims under the North Carolina Wrongful Death Act. *See Garcia v. United States*, 2016 WL 7355826, at *3 (E.D.N.C. Jan. 19, 2016)("As the administrator of Christian Javier Garcia's estate, Carlos Garcia, Jr. is "the personal representative or collector of the decedent," and, in this capacity, he is the only plaintiff authorized to bring a cause of action under the statute."); *see also Keys v. Duke University*, 435 S.E.2d 820, 821-22, 112 N.C. App. 518, 520-22 (N.C. App., 1993) (holding that a wife's claim for loss of consortium was subsumed by the North Carolina wrongful death statute and dismissed when brought in her individual capacity).

Accordingly, Plaintiff's wrongful death claims may only be instituted under North Carolina law by the collector or personal representative of the decedents. N.C. Gen. Stat. § 28A-18-2(a). Because, Plaintiff has not alleged that he is either the collector or the personal representative of the decedents, the Court is without jurisdiction over any North Carolina wrongful death claims brought in Plaintiff's individual capacity, and thus, this FTCA wrongful death lawsuit should be dismissed.

## II. The Plaintiff Has Failed to Name a Proper Defendant Under the FTCA

This Court also lacks jurisdiction over Plaintiff's tort claims against the Department of the Navy because the United States is the only appropriate party under the FTCA. Congress has never waived sovereign immunity for tort suits against federal entities, such as the Department of the Navy; therefore, the Department of the Navy is an improper party-defendant for these claims of relief. The Department of the Navy is the only federal party that Plaintiff has sued. The FTCA explicitly states:

> The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title [FTCA], and the remedies provided by this title in such cases shall be exclusive.

28 U.S.C. § 2679(a). It is well established that a federal agency "cannot be sued *eo nomine*" unless explicitly authorized by Congress. *Holmes v. Eddy*, 341 F.2d 477, 480 (4th Cir. 1965) ("The plaintiffs assert specific reliance upon the Federal Tort Claims Act to secure money damages against the S.E.C., but it is specifically provided by § 2679 of Title 28 of the United States Code that . . . The S.E.C. cannot be sued *eo nomine* [in its own name]."); *Strong v. Dyar*, 573 F.Supp.2d 880, 884 (D. Md. 2008) (reasoning in a FTCA matter that "[t]he Court agrees that the Strongs have filed suit against the incorrect defendant-instead of suing the United States, they have sued the Air Force and the Secretary of the Air Force"); *Hargett v. Federal Bureau of*

*Prison*, 2007 WL 3178185, at *6 (D.S.C. Oct. 5, 2007) ("[i]t is well established that federal agencies cannot be sued *eo nomine* [in their own name] unless specifically authorized by Congress . . .").

Here, suit has been brought under the FTCA, and the remedy of that Act—a suit against the United States—is exclusive, and the federal agency cannot be sued in its own name. *See Holmes*, 341 F.2d at 480. Accordingly, Plaintiff's tort claims against the Department of the Navy are jurisdictionally barred, and this suit should be dismissed.

### III. The Plaintiff Has Failed to Plead a Cause of Action that is not Barred by the FTCA's Discretionary Function Exception.

Even if Plaintiff had established in his Amended Complaint that he was the personal representative or collector of the decedents and had sued a proper defendant under the FTCA, the Plaintiff has failed to allege claims that survive the FTCA's discretionary function exception. The FTCA's waiver of immunity is limited by several exceptions. "The most important of these exceptions to the waiver of sovereign immunity is the discretionary function exception." *McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004). Under the discretionary function exception, the FTCA's waiver of sovereign immunity does not extend to challenges "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 808 (1984). In this Circuit, the Plaintiff bears the burden of pleading and proving a cause of action that falls outside of the discretionary function exception. *Wood v. United States*, 845 F.3d

123, 127 (4th Cir. 2017) (citing *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005)); *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Here, because Plaintiff's Amended Complaint fails to allege conduct that falls outside of the discretionary function exception, the Court lacks jurisdiction to consider Plaintiff's FTCA claims.

Under the discretionary function exception of the FTCA, the Court lacks subject-matter jurisdiction where: (1) no mandatory or specific statute, regulation, or policy has been violated; and (2) the challenged conduct is "susceptible to policy analysis." *See* 28 U.S.C. § 2680(a); *Gaubert v. United States*, 499 U.S. 315, 322 (1991). Under the first criterion, a plaintiff must allege that conduct is non-discretionary because a "controlling statute or regulation **mandates** that a government agent perform his or her function in a **specific** manner." *In re Camp Lejeune North Carolina Water Contamination Litigation* (hereafter *In Re Camp Lejeune*), 263 F.Supp.3d 1318, 1345 (N. D. Ga. 2016) (emphasis added) (citing *Zelaya v. United States*, 781 F.3d 1315, 1329 (11th Cir. 2015)). Under the second criterion, plaintiff must allege that the challenged action is not "susceptible to policy analysis," an inquiry that focuses "not on the agent's subjective intent" but "the nature of the actions" challenged." *Suter v. United States*, 441 F.3d 306, 311 (4th Cir. 2006) (quoting *Gaubert*, 499 U.S. at 325). *See also Hardscrabble Ranch LLC v. United States*, 840 F.3d 1216, 1222 (10th Cir. 2016) ("we presume that a government agent's discretionary actions are grounded in policy, and it is up to the challenger to allege facts showing that the actions were actually not policy-oriented").

Here, Plaintiff has failed to allege that the Government violated any mandatory and specific provisions or facts showing that the challenged governmental conduct is not susceptible

to policy analysis. Accordingly, the discretionary function exception bars Plaintiff's FTCA claims. 28 U.S.C. § 2680(a).

### A. Plaintiff Has Not Alleged that the Government Violated a Mandatory and Specific Provision.

Plaintiff cannot meet his burden under the first criterion of the discretionary function exception test because he has not alleged that the Government violated a mandatory provision that prescribed a specific course of conduct regarding the Camp Lejeune water supply. To defeat the discretionary function exception under this criterion, the Fourth Circuit and other courts have consistently reasoned that a plaintiff must point to a directive that gave the United States specific "instructions that it [wa]s compelled to follow." *Williams,* 50 F.3d at 309; *see also Baum v. United States*, 986 F.2d 716, 722 (4th Cir. 1993) ("very general, sweeping language is insufficient to remove . . . the discretion of the National Park Service"); *Holbrook v. United States*, 673 F.3d 341, 348 (4th Cir. 2012) ("[t]he existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion.") (citation omitted); *accord Loughlin v. United States*, 286 F. Supp. 2d 1, 8 (D.D.C. 2003) ("Not all regulations satisfy [the step one] standard; ... a directive must 'be mandatory and it must clearly and specifically define what the employees are supposed to do.'")(quoting *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 799 (8th Cir.1993)); *see also Kelly v. United States*, 241 F.3d 755, 761-62 (9th Cir.2001) (broad mandates that do not specify a particular course of conduct do not remove discretion).

A recent Fourth Circuit case shows why alleging the violation of a general directive is not sufficient to establish jurisdiction when such a directive allows federal employees discretion in implementation. In *Seaside Farm, Inc. v. United States*, 842 F.3d 853 (4th Cir. 2016), a tomato farm brought a FTCA lawsuit against the United States, alleging that the Food and Drug

10

Administration negligently issued a salmonella contamination warning that devalued its crop. The Fourth Circuit held that the discretionary function exception barred plaintiff's FTCA claims. The plaintiff had argued that various FDA manuals included "standard operating procedures, contamination warning protocols, 'essential steps,' and major considerations for emergency response activities" that eliminated the government's discretion. *Id.* at 858-59. However, the Court found that FDA manuals left room for FDA staff to exercise discretion in implementation, including, allowing "[i]nvestigative, laboratory, and technical/scientific staff" to pursue multiple avenues of obtaining information. *Id.* at 860; *see also Sanders v. United States*, 2019 WL 4125233, at *7 (4th Cir. Aug. 30, 2019)(provision can defeat the discretionary function exception only if it "prescribes a mandatory course of action" for the government employee).

Here, Plaintiff's Amended Complaint fails to allege jurisdiction under the first criterion of the discretionary function exception test because Plaintiff fails to point to any ***mandatory language that prescribes a specific course of conduct that a government employee failed to follow*** with respect to the water contamination at Camp Lejeune. Plaintiff makes only threadbare allegations that government employees at Camp Lejeune did not abide by "naval potable water regulation BUMED 6240.3B and 6240.3C," and "Base Order 5100.13b." Pl. Am. Compl. ¶¶ 58, 59. Plaintiff has failed to allege how "BUMED 6240.3B and 6240.3C" and "Base Order 5100.13b" are mandatory provisions that are sufficiently specific to remove the government's discretion in relation to the Camp Lejeune water supply.

Indeed, in the *In re Camp Lejeune* multi-district litigation ("MDL"), the United States District Court for the Northern District of Georgia found that those very provisions were not sufficiently specific to remove discretion from government employees. *See* 263 F. Supp. 3d 1318, 1347-54. The Court found that even though the BUMED regulations contained some

11

mandatory language, they did not contain "specific mandatory instructions for how to achieve a clean water supply that removed any discretion from the part of those responsible for the water supply at Camp Lejeune." *Id.* at 1351. The Court concluded that "[t]he question is not whether Camp Lejeune was under a directive to provide a clean water supply; the question is whether those responsible for the required clean water supply had any discretion in the manner in which that supply was to be achieved." *Id.* at 1350. With respect to Base Order 5100.13B, the Court stated that the Order did "not specify any particular contaminants and gave base officials discretion to determine whether an item is salable or serviceable and where it should be disposed," and concluded that there "are no mandatory or specific methods of disposal required in the Base Order." *Id.* at 1351.

In another Camp Lejeune case, *Snyder v. United States*, 504 F. Supp. 2d 136, 138 (S.D. Miss. 2007)), *aff'd*, 296 Fed. Appx. 399 (5th Cir. 2008), *cert denied*, 556 U.S. 1281 (2009), both the district court and Fifth Circuit Court of Appeals concluded that the government's disposal of toxic chemicals at Camp Lejeune could not be challenged under the FTCA. The district court stated that "[d]ue to the absence of any regulations **specifically delineating** how to dispose of TCE and/or PCE . . . the manner in which the Marine Corps decided to dispose of these chemicals during the time frame at issue fell within the definition of a discretionary function, rendering the Defendant immune from suit." *Id.* at 141 (emphasis added).

Although this Court, in *Jones v. United States*, held that the BUMED Instructions contained mandatory language that specifically limited acceptable levels of chlorinated hydrocarbons, 691 F. Supp. 2d 639, 643 (E.D.N.C. 2010), the *In Re Camp Lejeune* MDL court correctly determined that the BUMED Instructions "only regulate[d] a category of 'chlorinated hydrocarbons' as a part of the 'pesticides' category," and "did not regulate any of the 'volatile

organic solvents' at issue [at Camp Lejeune]." 263 F. Supp. 3d at 1351. Further, as the Camp Lejeune MDL noted, "the BUMEDs use mandatory language with respect to the need to deliver clean drinking water," but "the manner in which this objective was to be achieved was left to the agency." *Id.* at 1350.[2]

Here, Plaintiff has failed to allege any mandatory and specific language from an applicable provision that would constrain the government's discretion for the conduct challenged.

### B. Plaintiff Has Failed to Allege Facts to Establish that the Challenged Governmental Conduct is not Susceptible to Policy Analysis.

Because Plaintiff has not alleged that the United States violated a specific and mandatory provision relevant to his allegations of negligence, Plaintiff can establish jurisdiction only by alleging facts that would establish that the challenged governmental conduct is not susceptible to policy analysis. However, Plaintiff has specifically stated allegations of negligence that are susceptible to policy analysis, including the government's alleged failure to (1) protect the Camp Lejeune water supply from contamination, (2) properly design and construct the water distribution system at Camp Lejeune, and (3) remediate and notify the Camp Lejeune residents of exposure to contaminated water. Pl. Am. Compl. ¶¶ 57, 73. Given the important national security policies underlying the missions of the military at Camp Lejeune, there is a strong presumption that military policy considerations underlie government operations and operational decisions on base at Camp Lejeune. *See Gaubert*, 499 U.S. at 324 ("if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a

---

[2] This case was ultimately dismissed based on the judicial estoppel doctrine because the plaintiff intentionally failed to disclose the claim in concurrent bankruptcy proceedings. *See Jones v. United States*, 467 F. App'x 815 (11th Cir. July 29, 2013).

discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations"); *see also Seaside Farm*, 842 F.3d at 858 (if a statute or regulation allows discretion,"it must be presumed that [decisions] are grounded in policy when exercising that discretion")(citing *Holbrook*, 673 F.3d at 345 )(quoting *Gaubert*, 499 U.S. at 324).

Department of Navy regulations provide for the United States Marine Corps within the Department of the Navy, "to provide fleet marine forces of combined arms, together with supporting air components . . . for the conduct of such land operations as may be essential to the prosecution of a naval campaign." 10 U.S.C. § 8063(a). In addition, the Marine Corps is to "develop, in coordination with the Army and the Air Force, those phases of amphibious operations that pertain to the tactics, technique, and equipment used by landing forces." 10 U.S.C. § 8063(b). The military's decisions regarding the use, disposal, and regulation of chemicals in the Camp Lejeune water supply, along with its investigation, remediation, and notification decisions related to this subject-matter are necessarily intertwined with, and subject to, the policies underlying the military's broader mission. This includes the general missions of the United States Navy and Marine Corps and the specific missions of the units at Camp Lejeune.

Courts have consistently recognized that operational decisions made by the military implicate important policy considerations. In *Snyder*, the court concluded that the government's disposal of toxic chemicals at Camp Lejeune was conduct protected by the discretionary function exception because where no mandatory statute or regulation existed to constrain the discretion of government employees, the military was free to weigh environmental policies against security and military concerns. 504 F. Supp. 2d at 141-43. Likewise in *Aragon v. United States*, 146

14

Case 7:19-cv-00112-BO    Document 19    Filed 09/10/19    Page 14 of 18

F.3d 819 (10th Cir. 1998), in which the military's use and disposal of chemicals was at issue, the Tenth Circuit had "little doubt . . . that the Air Force's actions involved policy choices of the most basic kind." *Id.* at 826. The court explained "[o]perational decisions . . . were subject to defense and security considerations which encompass the heart of military policy." *Id.* Similarly, the Fourth Circuit affirmed the District Court's decision that the discretionary function exception applied to bar Plaintiff's FTCA claims in *Pieper v. United States by and Through Department of Defense*, where residents alleged that the Army's negligent waste disposal and remediation practices with respect to hazardous chemicals resulted in contaminated groundwater. 713 Fed. Appx. 137, 140 (4th Cir. 2017). The Court concluded that "[d]isposal determinations required consideration of multiple policy factors, including "national security, resource constraints, and environmental impact" and "remediation decisions" must "balance public safety, health, environmental impact, resource constraints, regulatory constraints, and stakeholder input." *Id.* (citation omitted).

Here, any decisions that the Navy or Marine Corps might have made regarding the Camp Lejeune water supply were susceptible to defense and security considerations, among other things. *See generally Snyder*, 504 F. Supp. 2d 136 (holding that decisions by the government regarding chemicals in the water supply at Camp Lejeune were the kinds of policy choices the discretionary function exception was designed to shield); *Sanchez*, 671 F.3d 86, 103 (1st Cir. 2012)("The Supreme Court has made clear that federal courts are constrained not to interfere with the exercise of such discretion by any agency, and that is particularly so in the running of military operations."). Relevant policy considerations that the military at Camp Lejeune would have had to balance for the conduct challenged in the Amended Complaint included: the need to maintain sufficient water services to operate the base at all times; the need to maintain military

15

equipment for training and deployment; the prioritization of limited financial resources to meet military objectives; the monitoring of drinking water for regulated substances, and overall compliance with the Department of Defense's mission. *See In re Camp Lejeune*, 263 F. Supp. 3d at 1354 ("the direction of resources on a military base . . . is a classic illustration of the kind of balancing of national security and economic policies that should be protected by the discretionary function exception").

Given the important national security policies underlying the United States Marine Corps' mission and the historic missions of the military at Camp Lejeune, there is a strong presumption that military policy considerations underlie government operations at Camp Lejeune. Plaintiff's Amended Complaint fails to allege any facts that would establish that the challenged conduct was not subject to these policy considerations. Accordingly, the governmental conduct being challenged at Camp Lejeune was susceptible to policy analysis and the discretionary function exception deprives this Court of subject-matter jurisdiction over Plaintiff's FTCA claims.

## CONCLUSION

For the foregoing reasons, this Court must dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction under the FTCA.

DATED this 10th day of September, 2019.

                                          Respectfully submitted,

                                          ROBERT J. HIGDON, JR.
                                          United States Attorney

                                          J. PATRICK GLYNN
                                          Director, Torts Branch
                                          Environmental Tort Litigation Section

                                          BRIDGET BAILEY LIPSCOMB
                                          Assistant Director, Torts Branch
                                          Environmental Tort Litigation Section

                                          ADAM BAIN
                                          Senior Trial Attorney, Torts Branch
                                          Environmental Tort Litigation Section

                                          GEOFFREY C. COOK
                                          Trial Attorney, Torts Branch
                                          Environmental Torts Litigation Section

                                          ALBERT LAI
                                          Trial Attorney, Torts Branch
                                          Environmental Torts Section

                                          */s/ Danielle L. Sgro*
                                          DANIELLE L. SGRO
                                          Trial Attorney, Torts Branch
                                          Environmental Tort Litigation Section
                                          United States Department of Justice
                                          P.O. Box 340, Ben Franklin Station
                                          Washington, D.C. 20044
                                          E-mail:  danielle.l.sgro@usdoj.gov
                                          Telephone:  (202) 616-4226
                                          Fax:  (202) 616-4473

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2019, a copy of the foregoing document was served on all counsel of record by operation of the Court's electronic filing system and can be accessed through that system.

                                                  */s/ Danielle L. Sgro*
                                                  DANIELLE L. SGRO

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2019, a copy of the foregoing document was served on all counsel of record by operation of the Court's electronic filing system and can be accessed through that system.

                                                  */s/ Danielle L. Sgro*
                                                  DANIELLE L. SGRO