IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-cv-00112-BO

| | |
|---|---|
| KENNETH WASHINGTON AS PERSONAL REPRESENTATIVE OF THE ESTATE OF (BABY BOY) WASHINGTON,<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION; 12(b)(1). |

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(1), the United States moves to dismiss Plaintiff's claim brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. First, Plaintiff failed to exhaust his administrative remedies for a wrongful death claim on behalf of Baby Boy Washington. 28 U.S.C. § 2679(a). Second, Plaintiff's Second Amended Complaint has failed to allege claims that are outside of the discretionary function exception to the FTCA's waiver of sovereign immunity. 28 U.S.C. § 2680(a). Thus, the Complaint must be dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

## BACKGROUND

In May of 2010, the Department of the Navy received an administrative claim from Kenneth Washington. Exhibit ("Exh.") 1, Washington Administrative Claim. The administrative claim alleged exposure to contaminants in the drinking water on base at Camp Lejeune, NC. *Id.*, p. 1. Kenneth Washington stated that due to his exposure to contaminants in the water, he lost

three children, and he is emotional and distraught. *Id.* Kenneth Washington identified himself as the sole claimant on the administrative claim form; the claim did not purport to assert a claim on behalf of his children or any other person. *Id.* Plaintiff's administrative claim submission included a birth and death certificate for only one male child, indicating a date of birth and death of February 3, 1982. Exh. 2. The death certificate listed a cause of death as "Hydatidiform Mole," indicating that the apparent pregnancy was likely an abnormal growth of tumorous cells, rather than a fetus. *See id.*[1]

After the Navy denied his administrative claim on January 24, 2019, *see* Exh. 3, Denial Letter, on June 21, 2019, Plaintiff filed a federal lawsuit, alleging the wrongful death of his three children and intentional infliction of emotional distress. Pl. Compl. [Dkt. No. 1]. Thereafter, on August 2, 2019, Plaintiff Kenneth Washington filed a First Amended Complaint [Dkt. No. 13], to "add new information received from Plaintiff regarding the timeline of the filing of his Standard Form 95." Pl. Motion to Amend, ¶ 5 [Dkt. 20].

On September 10, 2019, the United States filed a motion to dismiss Plaintiff's lawsuit for lack of subject-matter jurisdiction based on several facial deficiencies in Plaintiff's First Amended Complaint: (1) Plaintiff's failure to name the United States as a proper defendant in a FTCA matter; (2) Plaintiff's failure to allege representative capacity for a wrongful death action, a requirement under North Carolina law; and (3) Plaintiff's failure to allege claims that are not barred by the FTCA's discretionary function exception. Dfdt. Motion to Dismiss [Dkt. Nos. 18, 19, 27].

On September 30, 2019, Plaintiff filed a "Motion for Leave to Amend the Complaint" [Dkt. 20] and docketed separately on October 1, 2019, a Second Amended Complaint [Dkt. No.

---

[1] See https://www.merckmanuals.com/home/women-s-health-issues/cancers-of-the-female-reproductive-system/hydatidiform-mole

21] with attachments. Plaintiff's amendment sought "to add amplifying facts and allegations regarding defendant's breach of duty of care and negligence," "add the United States of America as a defendant to this action," and "add Plaintiff Kenneth Washington as a personal representative under North Carolina law to this complaint." Pl. Motion to Amend, ¶¶10-12 [Dkt. No. 20]. The action was styled as an action for "Wrongful Death" and "Intentional Infliction of Emotion Distress" on behalf of "Baby Boy" Washington, born and deceased on February 3, 1982. Second Amended Complaint, at 1-4 [Dkt. No.21]. On December 16, 2019, Plaintiff's Motion to Amend was granted. [Dkt. No. 30].

## STANDARD OF REVIEW

### I. Motion to Dismiss, Fed. R. Civ. P. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move the Court to dismiss claims for lack of subject-matter jurisdiction. Jurisdiction is the power to make law, and the Court must assure itself of its subject-matter jurisdiction before proceeding to the merits. *Steel Co. v. Citizens for a Better Environ.,* 523 U.S. 83, 93-94 (1998) (jurisdiction is a threshold matter that is inflexible and without exception).

When determining jurisdiction, the trial court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velsaco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). *See also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). "[I]n weighing the evidence the court may resolve factual questions to determine its jurisdiction." *Aromin v. Hill*, No. 2:05-cv-54, 2005 U.S. Dist. LEXIS 20523 at *4 (E.D. Va. Aug. 19, 2005). "In any case in federal court, the plaintiff has the burden of proving that subject matter jurisdiction exists. *Viault v. United States*, 609 F. Supp. 2d 518, 524 (E.D.N.C. 2009) (citing *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d 765, 768 (4th Cir. 1991)).

3

## II. The Federal Tort Claims Act (FTCA)

It is axiomatic that sovereign immunity shields the United States from suit without its consent. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA provides a limited waiver of the United States' sovereign immunity to tort suit. 28 U.S.C. §§1346(b), 2671-2680. The terms and conditions of that waiver limit the jurisdiction of federal courts to adjudicate tort suits against the government. *See United States v. Mottaz*, 476 U.S. 834, 841 (1986) ("When the United States consents to be sued, the terms of its waiver of sovereign immunity define the extent of the court's jurisdiction.") (citation omitted). The Supreme Court has held that waivers of sovereign immunity, and conditions on any waiver, must be "construed strictly in favor of the sovereign." *United States Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (addressing waivers of sovereign immunity in federal environmental statutes) (citations omitted).

The FTCA's waiver of sovereign immunity has several limitations. Two are relevant here. First, before bringing an FTCA suit in federal court a plaintiff must exhaust administrative remedies with the appropriate federal agency. 28 U.S.C. § 2675(a). Second, the FTCA contains a jurisdictional bar to suit, the discretionary function exception, 28 U.S.C. § 2680(a), under which the United States cannot be sued for discretionary, policy-based conduct.

## ARGUMENT

For the two reasons explained below, the court should dismiss Plaintiff's tort claims against the United States. First, Plaintiff has failed to exhaust his administrative remedies for any wrongful death claim for Baby Boy Washington. 28 U.S.C. § 2675(a). Second, the discretionary function exception of the FTCA bars Plaintiff's claims in this matter because he has not alleged either (1) that the Government violated a specific and mandatory directive relevant to his claims of negligence or (2) that the alleged negligent governmental conduct is not susceptible to protected policy analysis. 28 U.S.C. § 2680(a). Accordingly, the court should dismiss this FTCA

4

lawsuit.

I. **Plaintiff Failed to Exhaust His Administrative Remedies Under the FTCA for a Wrongful Death Claim on Behalf of Baby Boy Washington.**

The FTCA requires a party allegedly harmed by the negligence of a federal government employee to first file an administrative claim with the appropriate federal agency, and allow that agency an opportunity to act on the claim before bringing suit on the claim. *See* 28 U.S.C. § 2675(a). Here, Plaintiff Kenneth Washington is bringing an action as the personal representative of Baby Boy Washington for Wrongful Death and Intentional Infliction of Emotional Distress. Kenneth Washington, however, only filed an administrative claim on behalf of himself. His administrative claim did not state that it was being brought on behalf of any other person, and Kenneth Washington did not provide any proof to the Department of the Navy of his authority to present a claim on behalf of anyone else. In fact, Kenneth Washington was only recently appointed (in September of 2019) as the personal representative for Baby Boy Washington. *See* Pl. Second Am. Compl., Exh. A [Dkt. No. 21-2]. Thus, Kenneth Washington did not have authority to represent Baby Boy Washington at the time he filed his own administrative claim with the Navy, and his administrative claim on behalf of himself was not sufficient to exhaust is administrative remedies for a claim brought on behalf of Baby Boy Washington.

In order to bring an FTCA lawsuit against the United States, the plaintiff must first have presented the claim "to the appropriate Federal agency" and the claim must "have been finally denied by the agency in writing." 28 U.S.C. § 2675(a). This is a jurisdictional requirement and cannot be waived—the administrative claim procedure must be exhausted prior to filing a federal lawsuit. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986). Because the FTCA is a waiver of sovereign immunity, a plaintiff "must file an FTCA action in careful compliance with its terms." *Willis v. United States Postal*

*Service*, 2019 WL 1429593, at *1 (E.D.N.C., March 29, 2019) (quoting *Kokotis v. U.S. Postal Service*, 223 F.3d 275, 278 (4th Cir. 2000)).

Underlying 28 U.S.C. § 2675(a) are the FTCA's implementing regulations, which are codified at 28 C.F.R. §§ 14.2 and 14.3. Specifically, 28 C.F.R. § 14.2(a) states that a "claim shall be deemed to have been presented when a Federal agency receives from a claimant, his *duly authorized agent or legal representative* . . . written notification of an incident, accompanied by a claim . . . and the title or legal capacity of the person signing, *and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.*" (emphasis added). Additionally, 28 C.F.R. § 14.3(c) states that "[a] claim based on death may be presented by the executor or administrator of the decedent's estate, or by any other person legally entitled to assert such a claim in accordance with applicable State law."

The Fourth Circuit and this court have held that a plaintiff must comply with the implementing regulations to satisfy the FTCA's jurisdictional requirement of presenting an administrative claim—28 U.S.C. § 2675(a); *see, e.g.*, *Ahmed v. United States*, 30 F.3d 514, 516-17 (4th Cir. 1994) (upholding dismissal of FTCA claims where claimant had failed to comply with the "[r]egulations promulgated pursuant to the FTCA"); *Kokotis*, 223 F.3d at 278-79 (upholding dismissal of an FTCA claim for lack of subject matter jurisdiction because "[a]n administrative claim must be properly presented" and the plaintiff failed to comply with the FTCA's regulations that detail how to properly present a claim); *Penn Millers Ins. Co. v. United States*, 472 F.Supp.2d 705, 712 (E.D.N.C. 2005)("Moreover, if there are multiple claimants in a matter, "each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim, unless another is legally entitled to assert such a claim on their behalf.'"")(quoting *Muth v.*

6

*United States*, 1 F.3d 246, 249 (4th Cir. 1993)).

Here, because Kenneth Washington never presented a claim to the Department of Navy on behalf of Baby Boy Washington, the Plaintiff has not exhausted the administrative remedies for Baby Boy Washington's claim. In May of 2010, the Department of the Navy received an administrative claim from Kenneth Washington for the "loss of three children" and for being "emotional and distraught." Exh. 1, p.1. Kenneth Washington now seeks to bring a wrongful death claim, not on his own behalf, but as Personal Representative of the Estate of Baby Boy Washington. *See* Pl. Second Am. Compl. [Dkt. No. 21]. Kenneth Washington's administrative claim does not satisfy the jurisdictional requirement to submit an individual administrative claim on behalf of the Estate of Baby Boy Washington, and thus, Plaintiff has failed to exhaust administrative remedies for a claim on the Estate's behalf. Indeed, Kenneth Washington's administrative claim does not identify anyone besides himself as a claimant. *See* Exh. 1. While the claim seeks damages for "wrongful death," it does not in any way represent that Kenneth Washington sought damages on behalf of any other person. The claim did not give the Department of the Navy notice that Kenneth Washington was presenting a claim on behalf of Baby Boy Washington, or for any of the other two children referenced in the claim. Instead, Kenneth Washington's administrative claim states an emotional injury to himself due to an "inability to be close to women or develop a relationship" due to "fear of losing children." *Id.* Kenneth Washington, at best, satisfied the administrative exhaustion requirements as to a claim only for himself, not for claims on behalf of his late children. *See* 28 C.F.R. § 14.2(a); 14.3(c).[2]

---

[2] Plaintiff's Second Amended Complaint in this court is brought by Kenneth Washington, only as the personal representative of Baby Boy Washington. However, Plaintiff alleges injuries to himself that may not be recoverable in a wrongful death action. *See* Pl. Second Am. Compl., p. 18 (alleging Kenneth Washington "sustained pecuniary

7

Case 7:19-cv-00112-BO   Document 32   Filed 12/30/19   Page 7 of 20

Moreover, to bring an FTCA wrongful death lawsuit on behalf of the Estate of Baby Boy Washington, *see* Pl. Second Am. Compl. [Dkt. No. 21], Kenneth Washington was required to provide the requisite evidence of his authority to act on behalf of Baby Boy Washington when he presented an administrative claim to the Department of the Navy. 28 C.F.R. § 14.2(a). He could not do so because at the time Kenneth Washington presented his administrative claim, he lacked lawful authority to present FTCA wrongful death claims on behalf of Baby Boy Washington as he had not yet been appointed as the personal representative of the estate. Therefore, the 2010 claim cannot satisfy the jurisdictional requirement for administrative claim presentment for anyone besides Kenneth Washington. Indeed, Kenneth Washington was only appointed as the administrator of Baby Boy Washington's Estate in September of 2019, approximately nine years after he filed his administrative claim, and after the United States brought the deficiency to Plaintiff's attention. *See* Dfdt. Motion to Dismiss [Dkt. Nos. 18, 19, 27]; Pl. Second Am. Compl., [Dkt. No. 21-1]; Pl. Motion for Leave to Amend [Dkt. No. 20]; Pl. Memorandum in Support of Motion for Leave [Dkt. No. 20-1]; Pl. Resp., p. 2 [Dkt. No. 22]. Thus, Kenneth Washington cannot satisfy a jurisdictional requirement for bringing this action, *see* 28 U.S.C. § 2675(a); 28 C.F.R. §§ 14.2(a), 14.3(c); N.C. Gen. Stat. §28A-18-2; Exh. 1.

---

loss, mental anguish, emotional pain and suffering, and other damages"). Any tort claims that Kenneth Washington may make for injuries to himself arising out to the Camp Lejeune contamination are barred by the *Feres* doctrine because Washington was a service member stationed at Camp Lejeune at the time of the alleged injuries. Courts have consistently applied the *Feres* doctrine to bar personal injury claims arising out of the water contamination for service members who were stationed at Camp Lejeune. *See In re Camp Lejeune North Carolina Water Contam. Litig.*, 263 F.Supp. 3d 1318, 1341-43 (N. D. Ga. 2016), *aff'd*, 774 Fed. Appx. 564 (11th Cir. May 22, 2019); *Gros v. United States*, No. 06-20354, 232 Fed. Appx. 417 (5th Cir. May 15, 2007), *aff'g Grosv. United States*, Civ. Action No. H-04-4665 (S.D. Tex Sept. 27, 2005); *Perez v. United States*, No.09-22201, 2010 WL 11505507 (S.D. Fla. Mar. 1, 2010); *O'Connell v. Dep't of the Navy*, No. 10-10746, 2010 WL 5572928 (D. Mass. Dec. 21, 2010).

A failure to comply with the FTCA's implementing regulations regarding the proper manner of presentment constitutes a failure to exhaust administrative remedies under binding Fourth Circuit precedent. *See Ahmed*, 30 F.3d at 516-17; *Kokotis*, 223 F.3d at 278-79. Given that the FTCA's administrative exhaustion requirement is jurisdictional and that Kenneth Washington failed to comply with this jurisdictional prerequisite to suit, the court lacks subject-matter jurisdiction over Plaintiff's Second Amended Complaint. 28 U.S.C. § 2675(a); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)("[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.").

## II. **The Plaintiff Has Failed to Plead a Cause of Action that is not Barred by the FTCA's Discretionary Function Exception.**

In addition to the foregoing defects in Plaintiff's claims, Kenneth Washington has failed to allege claims that survive the FTCA's discretionary function exception. As stated above, the FTCA's waiver of immunity is limited by several exceptions. "The most important of these exceptions to the waiver of sovereign immunity is the discretionary function exception." *McMellon v. United States*, 387 F.3d 329, 335 (4th Cir. 2004). Plaintiff includes additional facts and allegations through his Second Amended Complaint in response to the United States' Motion to Dismiss the First Amended Complaint based on the FTCA's discretionary function exception. *Compare* Pl. First Am. Compl. [Dkt. No. 13] *with* Pl. Second Am. Compl. [Dkt. No. 21]. But, the claims asserted in Plaintiff's Second Amended Complaint still fail to survive the bar of the discretionary function exception.

Under the discretionary function exception, the FTCA's waiver of sovereign immunity does not extend to challenges "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The

discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 808 (1984). In this Circuit, the Plaintiff bears the burden of pleading and proving a cause of action that falls outside of the discretionary function exception. *Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017) (citing *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005)); *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). Here, because Plaintiff's Complaint fails to allege conduct that falls outside of the discretionary function exception, the Court lacks jurisdiction to consider Plaintiff's FTCA claims.

Under the discretionary function exception of the FTCA, the Court lacks subject-matter jurisdiction where: (1) no mandatory or specific statute, regulation, or policy has been violated; and (2) the challenged conduct is "susceptible to policy analysis." *See* 28 U.S.C. § 2680(a); *Gaubert v. United States*, 499 U.S. 315, 322 (1991). Under the first criterion, a plaintiff must allege that conduct is non-discretionary because a "controlling statute or regulation *mandates* that a government agent perform his or her function in a *specific* manner." *In re Camp Lejeune North Carolina Water Contamination Litigation* (hereafter *In Re Camp Lejeune*), 263 F.Supp.3d 1318, 1345 (N. D. Ga. 2016) (emphasis added) (citing *Zelaya v. United States*, 781 F.3d 1315, 1329 (11th Cir. 2015)). Under the second criterion, plaintiff must allege that the challenged action is not "susceptible to policy analysis," an inquiry that focuses "not on the agent's subjective intent" but "the nature of the actions" challenged." *Suter v. United States*, 441 F.3d 306, 311 (4th Cir. 2006) (quoting *Gaubert*, 499 U.S. at 325). *See also Hardscrabble Ranch LLC v. United States*, 840 F.3d 1216, 1222 (10th Cir. 2016) ("we presume that a government agent's

10

discretionary actions are grounded in policy, and it is up to the challenger to allege facts showing that the actions were actually not policy-oriented").

Here, Plaintiff has failed to allege that the Government violated any mandatory and specific provisions or facts showing that the challenged governmental conduct is not susceptible to policy analysis. Accordingly, the discretionary function exception bars Plaintiff's FTCA claims. 28 U.S.C. § 2680(a).

### A. Plaintiff has not Sufficiently Alleged a Violation of a Specific and Mandatory Provision in the Second Amended Complaint.

Plaintiff cannot meet his burden under the first criterion of the discretionary function exception test because he has not alleged that the government violated a mandatory provision that prescribed a specific course of conduct regarding the Camp Lejeune water supply. To defeat the discretionary function exception under this criterion, the Fourth Circuit and other courts have consistently reasoned that a plaintiff must point to a directive that gave the United States specific "instructions that it [wa]s compelled to follow." *Williams,* 50 F.3d at 309; *see also Baum v. United States*, 986 F.2d 716, 722 (4th Cir. 1993) ("very general, sweeping language is insufficient to remove . . . the discretion of the National Park Service"); *Holbrook v. United States*, 673 F.3d 341, 348 (4th Cir. 2012) ("[t]he existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion.") (citation omitted); *accord Loughlin v. United States*, 286 F. Supp. 2d 1, 8 (D.D.C. 2003) ("Not all regulations satisfy [the step one] standard; ... a directive must 'be mandatory and it must clearly and specifically define what the employees are supposed to do.'") (quoting *C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 799 (8th Cir.1993)); *see also Kelly v. United States*, 241 F.3d 755, 761-62 (9th Cir.2001) (broad mandates that do not specify a particular course of conduct do not remove discretion).

A recent Fourth Circuit case shows why alleging the violation of a general directive is not sufficient to establish jurisdiction when such a directive allows federal employees discretion in implementation. In *Seaside Farm, Inc. v. United States*, 842 F.3d 853 (4th Cir. 2016), a tomato farm brought a FTCA lawsuit against the United States, alleging that the Food and Drug Administration negligently issued a salmonella contamination warning that devalued its crop. The Fourth Circuit held that the discretionary function exception barred plaintiff's FTCA claims. The plaintiff had argued that various FDA manuals included "standard operating procedures, contamination warning protocols, 'essential steps,' and major considerations for emergency response activities" that eliminated the government's discretion. *Id.* at 858-59. However, the Court found that FDA manuals left room for FDA staff to exercise discretion in implementation, including, allowing "[i]nvestigative, laboratory, and technical/scientific staff" to pursue multiple avenues of obtaining information. *Id.* at 860; *see also Sanders v. United States*, 2019 WL 4125233, at *7 (4th Cir. Aug. 30, 2019)(provision can defeat the discretionary function exception only if it "prescribes a mandatory course of action" for the government employee).

Plaintiff's Second Amended Complaint does not sufficiently allege a violation of a specific and mandatory provision under the first part of the discretionary function exception test. Plaintiff now alleges in his Second Amended Complaint that the regulations he identified in his First Amended Complaint (attached as Exhibits B, C, (BUMEDs), and D (Base Order 5100.13b) to Plaintiff's Second Amended Complaint), "mandated," "commanded," and "directed" "in a non-discretionary manner and with specific instructions." However, Plaintiff's claims remain barred by the FTCA's discretionary function exception because Plaintiff challenges regulations identical to those challenged in the 2016 Camp Lejeune multi-district litigation ("MDL"), which were appropriately found to be discretionary. *See In re Camp Lejeune North Carolina Water*

*Contamination Litigation*, 263 F. Supp.3d 1318 (N.D. Ga. 2016); 28 U.S.C. § 2680(a). As the Camp Lejeune MDL court concluded, the BUMEDs and Base Order 1500.13b do not legally impose specific and mandatory directives upon the United States with respect to the chemicals Plaintiff places at issue (tetrachloroethylene (perchloroethylene) ("PCE"), trichloroethylene ("TCE"), dichloroethylene ("DCE"), benzene, volatile organic compounds ("VOCs"), and chlorinated solvents), *see* Pl. Second Amended Compl., ¶¶ 59, 72, 80.

With respect to the BUMEDs, the Camp Lejeune MDL court determined that these provisions do not apply to the chemicals that Plaintiff alleges caused harm during the relevant time period. As that court found, after considering expert testimony, the BUMEDs did not require any action regarding the chemicals at issue until 1993. The court noted that the BUMEDs "did not specifically list benzene, vinyl chloride, TCE, and DCE until the 1993 update to BUMED 6240.10, after the Camp Lejeune contaminated wells were closed." *In re Camp Lejeune North Carolina Water Contamination Litigation*, 263 F. Supp.at 1348.[3] Moreover, the court determined that any reference to "chlorinated hydrocarbons" in the BUMEDS prior to 1993 did not include TCE, PCE, vinyl chloride, or benzene. As the court explained, the term "chlorinated hydrocarbons" in a prior BUMED referred to pesticides and not to the volatile organic solvents at issue at Camp Lejeune:

> The 1972 BUMED reference by the Plaintiffs only regulates a category of 'Chlorinated hydrocarbons' as a part of the 'pesticides' category. The 1972 BUMED was based on the 1962 Public Health Service Drinking Water Standards which did not regulate any of the 'volatile organic solvents' at issue here. As described above, the EPA only regulated 'chlorinated hydrocarbons' as part of pesticides. The Government's experts, Dr. Davis Ford (environmental engineer) and Dr. Remy Hennet (geochemist) both testified that the types of chemicals that

---

[3] Moreover, as the MDL court found: "[i]n 1984, the EPA issued a proposal for "recommended" maximum contamination levels for TCE, PCE, DCE, and vinyl chloride. It was not until 1989 that the EPA issued final regulations for enforceable maximum contamination levels for benzene, TCE, and vinyl chloride. Final levels for DCE and PCE were not effective until 1992." *Id.*

> caused the relevant contamination here were not regulated prior to 1985 when the Camp Lejeune wells closed. Dr. Hennet provided testimony about the use of the term 'chlorinated hydrocarbon' in the BUMEDS. He testified that the term 'chlorinated hydrocarbon' referred to a class of 'pesticides, herbicides, and fungicides' and not the volatile organic compounds such as TCE and PCE. … The question is whether there were specific mandatory regulations concerning certain substances that the Plaintiffs allege were present in the Camp Lejeune water supply. When viewed through this lens, whether those substances are characterized as 'pesticides' or 'organic solvents' is very relevant to the inquiry of whether certain regulations mandated limits as to contaminants. The Plaintiffs' expert agreed on the characterization of these chemicals. … [T]here is no information in the record which would support an argument that there was any specific mandatory regulation from any source governing contamination by volatile organic substances, benzene, TCE, DCE, PCE, or vinyl chloride.

*Id.* at 1351-52. Thus, Plaintiff's allegations regarding the BUMEDs have been found legally insufficient to mandate a specific course of action during the time he alleges that he and his family were exposed to contaminated water at Camp Lejeune.

The United States recognizes that this Court, without the benefit of jurisdictional discovery, reached a different conclusion about the BUMEDs in *Jones v. United States*, 691 F. Supp. 2d 639 (E.D. N.C. 2010). However, even under this Court's interpretation of the effect of the BUMEDs in *Jones,* Plaintiff's claim is barred. In *Jones*, the court concluded that the BUMEDs required specific action by the Marine Corps only in conjunction with an August "1982 report to the Commanding General of Camp Lejeune" which "specifically describe[d] the presence of TCE and PCE." *See* 691 F. Supp. 2d at 642-43. Kenneth Washington's Second Amended Complaint is a wrongful death action for the loss of a child that he alleges was born and died in February 1982. Pl. Second Am. Compl. ¶ 19 [Dkt. No. 21]. Thus, the injury of which Kenneth Washington complains in his Second Amended Complaint was before the letter to the Commanding General in August 1982, which shows that even if the BUMEDs applied to the chemicals at issue in this case, the Commanding General had not been informed of the contamination prior to the injuries alleged in Plaintiff's Second

14

Amended Complaint, and the rationale in *Jones* would thus not apply to save Plaintiff's Second Amended Complaint.

Similarly, Plaintiff cannot establish through his Second Amended Complaint that Base Order 5100.13b imposed any relevant specific and mandatory requirement on the United States. Base Order 5100.13b merely required base personnel to take steps to avoid improper disposal practices and called for periodic inspections of contaminants in stock to determine serviceability; if materials were determined to be in a deteriorated or hazardous condition, they were to be disposed of following certain procedures, and in a designated disposal area. The Camp Lejeune MDL court concluded: "The Base Order . . . does not specify any particular contaminants and gives base officials discretion to determine whether an item is salable or serviceable and where it should be disposed. There are no mandatory or specific methods of disposal required in the Base Order." 263 F. Supp. at 1351.

### B. **Plaintiff Has Not Alleged Conduct that is not Policy Based in his Second Amended Complaint.**

Because Plaintiff has not alleged that the United States violated a specific and mandatory provision, Plaintiff can establish jurisdiction only by alleging facts that would establish that the challenged governmental conduct is not susceptible to policy analysis. However, Plaintiff has made no such showing.

To the contrary, given the important national security policies underlying the missions of the military at Camp Lejeune, there is a strong presumption that military policy considerations underlie government operations and operational decisions on base at Camp Lejeune. *See Gaubert*, 499 U.S. at 324 ("if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations");

*see also Seaside Farm*, 842 F.3d at 858 (if a statute or regulation allows discretion, "it must be presumed that [decisions] are grounded in policy when exercising that discretion") (citing *Holbrook*, 673 F.3d at 345 ) (quoting *Gaubert*, 499 U.S. at 324).

Department of Navy regulations provide for the United States Marine Corps within the Department of the Navy, "to provide fleet marine forces of combined arms, together with supporting air components . . . for the conduct of such land operations as may be essential to the prosecution of a naval campaign." 10 U.S.C. § 8063(a). In addition, the Marine Corps is to "develop, in coordination with the Army and the Air Force, those phases of amphibious operations that pertain to the tactics, technique, and equipment used by landing forces." 10 U.S.C. § 8063(b). The military's decisions regarding the use, disposal, and regulation of chemicals in the Camp Lejeune water supply, along with its investigation, remediation, and notification decisions related to this subject-matter are necessarily intertwined with, and subject to, the policies underlying the military's broader mission. This includes the general missions of the United States Navy and Marine Corps and the specific missions of the units at Camp Lejeune.

Courts have consistently recognized that operational decisions made by the military implicate important policy considerations. In *Snyder v. United States*, 504 F.Supp. 2d 136 (S.D. Miss. 2007), the court concluded that the government's disposal of toxic chemicals at Camp Lejeune was conduct protected by the discretionary function exception because where no mandatory statute or regulation existed to constrain the discretion of government employees, the military was free to weigh environmental policies against security and military concerns. 504 F. Supp. 2d at 141-43. Likewise in *Aragon v. United States*, 146 F.3d 819 (10th Cir. 1998), in which the military's use and disposal of chemicals was at issue, the Tenth Circuit had "little

16

Case 7:19-cv-00112-BO   Document 32   Filed 12/30/19   Page 16 of 20

doubt . . . that the Air Force's actions involved policy choices of the most basic kind." *Id.* at 826. The court explained "[o]perational decisions . . . were subject to defense and security considerations which encompass the heart of military policy." *Id.* Similarly, the Fourth Circuit affirmed the district court's decision that the discretionary function exception applied to bar Plaintiff's FTCA claims in *Pieper v. United States by and Through Department of Defense*, where residents alleged that the Army's negligent waste disposal and remediation practices with respect to hazardous chemicals resulted in contaminated groundwater. 713 Fed. Appx. 137, 140 (4th Cir. 2017). The court concluded that "[d]isposal determinations required consideration of multiple policy factors, including "national security, resource constraints, and environmental impact" and "remediation decisions" must "balance public safety, health, environmental impact, resource constraints, regulatory constraints, and stakeholder input." *Id.* (citation omitted). *See also OSI, Inc. v. United States*, 285 F.3d 947, 953 (11th Cir. 2002) (stating that "[t]he nature of the military's function requires that it be free to weigh environmental policies against security and military concerns"); *Oxendine v. United States*, No. 3:08-4036-CMC-PJG, 2009 WL 3757517, *5 (D.S.C. Nov. 9, 2009) (in case involving TCE contamination, stating "the Air Force's actions regarding the conduct of military operations in susceptible to policy analysis"); *Horton v. United States*, No. 3:13-cv-947, 2014 WL 2780271, *6 (D.S.C. June 19, 2014) (finding that Shaw Air Force Base's "decisions concerning the use, disposal, or remediation of TCE or PCE; maintenance or monitoring of water systems; or public notification of contamination were grounded in public policy").

Here, any decisions that the Navy or Marine Corps might have made regarding the Camp Lejeune water supply were susceptible to defense and security considerations, among other things. *See generally Snyder*, 504 F. Supp. 2d 136 (holding that decisions by the government

regarding chemicals in the water supply at Camp Lejeune were the kinds of policy choices the discretionary function exception was designed to shield); *Sanchez v. United States*, 671 F.3d 86, 103 (1st Cir. 2012) ("The Supreme Court has made clear that federal courts are constrained not to interfere with the exercise of such discretion by any agency, and that is particularly so in the running of military operations."). Relevant policy considerations that the military at Camp Lejeune would have had to balance regarding its water supply included: the need to maintain sufficient water services to operate the base at all times; the need to maintain military equipment for training and deployment; the prioritization of limited financial resources to meet military objectives; the monitoring of drinking water for regulated substances, and overall compliance with the Department of Defense's mission. *See In re Camp Lejeune*, 263 F. Supp. 3d at 1354 ("the direction of resources on a military base . . . is a classic illustration of the kind of balancing of national security and economic policies that should be protected by the discretionary function exception").

Given the important national security policies underlying the United States Marine Corps' mission and the historic missions of the military at Camp Lejeune, there is a strong presumption that military policy considerations underlie government operations at Camp Lejeune. Plaintiff's Complaint fails to allege any facts that would establish that the challenged conduct was not subject to these policy considerations. Accordingly, the governmental conduct being challenged at Camp Lejeune was susceptible to policy analysis and the discretionary function exception deprives this Court of subject-matter jurisdiction over Plaintiff's FTCA claims.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff's Second Amended Complaint must be dismissed for lack of subject-matter jurisdiction.

DATED this 30th day of December, 2019.

                Respectfully submitted,

                ROBERT J. HIGDON, JR.
                United States Attorney

                J. PATRICK GLYNN
                Director, Torts Branch
                Environmental Tort Litigation Section

                BRIDGET BAILEY LIPSCOMB
                Assistant Director, Torts Branch
                Environmental Tort Litigation Section

                ADAM BAIN
                Senior Trial Attorney, Torts Branch
                Environmental Tort Litigation Section

                GEOFFREY C. COOK
                Trial Attorney, Torts Branch
                Environmental Tort Litigation Section

                ALBERT LAI
                Trial Attorney, Torts Branch
                Environmental Tort Litigation Section

                */s/ LaCresha A. Johnson*
                LACRESHA A. JOHNSON
                Trial Attorney, Torts Branch
                Environmental Tort Litigation
                United States Department of Justice
                P.O. Box 340, Ben Franklin Station
                Washington, D.C. 20044
                E-mail: lacresha.a.johnson@usdoj.gov
                Telephone: (202) 616-4447
                Fax: (202) 616-4473

19

Case 7:19-cv-00112-BO   Document 32   Filed 12/30/19   Page 19 of 20

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2019, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

 */s/ LaCresha A. Johnson*
LACRESHA A. JOHNSON