IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-cv-00112-BO

| | |
|---|---|
| KENNETH WASHINGTON AS PERSONAL REPRESENTATIVE OF THE ESTATE OF (BABY BOY) WASHINGTON,<br><br>Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION; FED. R. CIV. P. 12(b)(1). |

**INTRODUCTION**

Plaintiff's response fails to save his Second Amended Complaint from dismissal on either of the two independent grounds raised by the United States. First, Kenneth Washington did not exhaust his administrative remedies for a wrongful death action on behalf of Baby Boy Washington under the Federal Tort Claims Act ("FTCA"). Kenneth Washington's administrative claim focused on alleged damages to Mr. Washington himself rather than on damages to the Estate of Baby Boy Washington, and, significantly, Mr. Washington lacked representative capacity to settle a claim for the Estate of Baby Boy Washington during the administrative claims process. Plaintiff's argument that his claim provided notice of damages to the Estate of Baby Boy Washington is unconvincing, and Plaintiff does not dispute that he lacked representative capacity during the administrative claim process. Second, Plaintiff's claims are barred by the FTCA's discretionary function exception. Plaintiff's response fails to show that any government conduct was constrained during the relevant time by any provision that was both mandatory and specific under the first part of the discretionary function exception test. Plaintiff's arguments, to the contrary, fail because Plaintiff cannot show, even under the rationale of

1

*Jones v. United States*, that the government had knowledge of concentrations of contaminants that exceeded the standard in the BUMED instruction for chlorinated hydrocarbons prior to Baby Boy Washington's birth. Further, Plaintiff's response fails to demonstrate that any alleged negligent conduct was not susceptible to policy analysis under the second part of the discretionary function exception test. Plaintiff does not even address the consistent case law holding that the type of conduct that Plaintiff challenges regarding operation of a military base implicates important public policy considerations. Accordingly, Plaintiff's Second Amended Complaint should be dismissed for lack of subject-matter jurisdiction.

## ARGUMENT

**I.  The Court Lacks Subject-Matter Jurisdiction over Plaintiff's Second Amended Complaint Because Plaintiff Failed to Exhaust His Administrative Remedies for a Wrongful Death Claim on Behalf of Baby Boy Washington Prior to Filing Suit in Federal Court.**

Plaintiff's response, which attempts to transform an administrative claim brought on behalf of an individual claimant, Kenneth Washington, for his own emotional distress, into a wrongful death claim on behalf of the estate of a deceased child, is contrary to law. The administrative claims process provides the opportunity for the claimant and the agency to reach an equitable resolution without litigation. Congress "intended to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." S. Rep. No. 89-1327, at 1 (1966) (Conf. Rep.). The legislative history confirms that the congressional purpose in establishing administrative claims procedures was to provide all parties the opportunity to settle alleged claims "to reduce unnecessary congestion in the courts." *Id.* at 3. In order for the process to work as Congress intended, the claimant must give the agency fair notice of the claim that is being brought, and the claimant must have authority to settle the claim.

Here, the claim submitted by Mr. Washington alleged injury only to himself; it did not seek

2

compensation on behalf of the Estate of Baby Boy Washington.  Mr. Washington articulates his claim in terms of *his own emotional distress*: "[b]ecause of the contaminates in the water I loss [sic] three children…I'm still very emotional…I can't be close to women…" *See* Claim of Kenneth R. Washington.  Dkt. No. 32-1.  There is no statement regarding damages that an estate would claim in a wrongful death case, such as the loss of the decedent's expected income, the value of services that the decedent would have provided, or loss of comfort and companionship of the decedent.  *See* N.C. Gen Stat. § 28A-18-2.  Plaintiff's after-the-fact claim of how he calculated the damage amount (Pl. Resp. at 6) cannot remedy the fact that there is no statement regarding a loss to the Estate of Baby Boy Washington on the face of Mr. Washington's administrative claim.  Additionally, even if the statements in the SF-95 administrative claim form had indicated that Mr. Washington was asserting a claim on behalf of the Estate of Baby Boy Washington, Plaintiff did not have representative capacity for the Estate of Baby Boy Washington at any time during the administrative process.  Therefore, Plaintiff could never have settled a wrongful death claim for the Estate of Baby Boy Washington at the administrative stage.  In fact, Kenneth Washington did not obtain authority to represent the estate until September 2019, after the United States notified Plaintiff of his failure to allege representative capacity in an earlier Complaint.

Under Plaintiff's theory, an administrative claim only requires a hint of a related claim and a sum certain to exhaust administrative remedies, without regard to representative authority during the administrative process.  This is contrary to binding Fourth Circuit precedent.  In *Ahmed v. United States*, 30 F.3d 514 (4th Cir. 1994), the Fourth Circuit directly addressed the issue of representative capacity, finding that where the claimant failed to present evidence of representative capacity within the required period, the claim was barred.  The Court summarized its holding as follows:

> [I]n order to *present* a personal injury claim to the appropriate administrative agency, the claimant must present it to the agency in writing by means of an SF 95 or an equivalent; the writing must include a claim for money damages in a sum certain; *if the claimant is*

3

> *represented, the representative's authorization must be demonstrated; and these matters must be accomplished within two years of the incident.*

*Id.* at 517 (emphasis added). As in *Ahmed*, no evidence was ever presented to the Navy during the administrative process that Kenneth Washington had authority to represent the Estate of Baby Boy Washington. In fact, it is undisputed that Kenneth Washington did not have any such authority and could not have settled a claim for the estate. For this reason, under *Ahmed*, this case must be dismissed.

Plaintiff's reliance on the District of Maryland cases, *Munger*, *Chang-Williams*, and *Glover*, (Pl. Resp. at 6-7) misses the mark because each case presented exceptional circumstances not present in this case. These cases are distinguishable from *Ahmed* because each of the cited cases presented unique factual circumstances under Maryland's Wrongful Death Statute. There was no question regarding whether there was representative capacity or whether the claim clearly informed the agency of a wrongful death claim. *Munger v. United States*, 116 F. Supp. 2d 672, 676 (D. Md. 2000) ("[no] challenge [to] the legal capacity of the Mungers to bring the claim"); *Chang-Williams v. United States*, 965 F. Supp. 2d 673, 699 (D. Md. 2013) ("it is clear that the SF-95 form filed…[indicates] that they planned to pursue a wrongful death claim"); *Glover v. United States*, 996 F. Supp. 2d 372, 376-77 (D. Md. 2014) (the administrative claim clearly informed the government of a wrongful death claim). Irrespective of Plaintiff's reliance on these district court cases, this case falls within binding Fourth Circuit precedent that precludes the argument that it is unnecessary to file an administrative claim for each individual claimant or establish representative authority during the administrative claim process. *Muth v. United States*, 1 F.3d 246, 249 (4th Cir. 1993) (individual claims required); *Ahmed*, 30 F.3d at 517 (representative authority required). Here, it is undisputed that Mr. Washington did not have representative capacity at the time he filed his claim or at any time during the administrative claims process. Indeed, he only obtained representative capacity in September 2019, after the government

informed him of this deficiency in the allegations of the Complaint.

Citing *Estate of Tallman,* Plaintiff seeks to minimize the lack of personal representation by claiming that Mr. Washington could simply ratify an administrative claim. *See* Pl. Resp. at 9; *Estate of Tallman ex rel. Tallman v. City of Gastonia,* 682 S.E.2d 428 (N.C. Ct. App. 2009) (estate representative sought to ratify wrongful death action filed prior to receipt of letters of administration). Here, subsequent ratification would not change the fact that Mr. Washington could never have settled Baby Boy Washington's claim while it was pending with the Navy. Ignoring Plaintiff's failure to provide evidence of representative capacity during the administrative proceeding would defeat the whole purpose of the administrative claim requirement. Thus, Plaintiff's claim must be dismissed for failure to exhaust administrative remedies.

### II. The Court Lacks Subject-Matter Jurisdiction Over Plaintiff's Second Amended Complaint Because Plaintiff's Claims Are Barred by the Discretionary Function Exception.

Even if Plaintiff had met the administrative requirements, the Court would still lack subject-matter jurisdiction over Plaintiff's claims because of the FTCA's discretionary function exception. Plaintiff bears the burden of pleading and proving a cause of action that falls outside of the discretionary function exception. *Wood v. United States*, 845 F.3d 123, 127 (4th Cir. 2017) (citing *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005)); *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In response to this factual motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Plaintiff has the burden of presenting sufficient evidence to establish subject-matter jurisdiction. *Kerns v. United* States, 585 F.3d 187, 192 (4th Cir. 2009) (stating that on a factual challenge, a court may look beyond the pleadings and "decide disputed issues of fact with respect to subject matter jurisdiction"). "In any case in federal court, the Plaintiff has the burden of proving that subject matter jurisdiction exists." *Viault v. United States*, 609 F. Supp. 2d 518, 524 (E.D.N.C. 2009) (citing *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d 765, 768 (4th Cir. 1991)).

5

Plaintiff's response fails to demonstrate either: (1) that a mandatory and specific directive constrained the government's alleged negligent conduct, or (2) that any alleged negligent conduct was not "susceptible to policy analysis." *See* 28 U.S.C. § 2680(a).

> **A.    Plaintiff Has Not Demonstrated that a Specific and Mandatory Provision Constrained the Government's Alleged Negligent Conduct**.

Plaintiff's response cannot overcome the FTCA's discretionary function. The Fourth Circuit and other courts have consistently reasoned that in order to defeat the discretionary function exception, a Plaintiff must point to a directive that gave the United States specific "instructions that it [wa]s compelled to follow." *Williams,* 50 F.3d at 309; *see also Baum v. United States*, 986 F.2d 716, 722 (4th Cir. 1993) ("very general, sweeping language is insufficient to remove . . . the discretion of the National Park Service").

Plaintiff's response focuses primarily on the Navy's BUMED Instructions. The provision Plaintiff cites in section 7(a)(3)(d) provides that "[s]ubstances which may have harmful physiological effects or for which physiological effects are not known, shall not be introduced into the system in a manner which would permit them to reach the consumer." Pl. Resp. at 14. Plaintiff argues that the *In re Camp Lejeune MDL* Court ignored this section. *Id.* That is incorrect. The *Camp Lejeune MDL* Court considered the BUMED instructions in their entirety and concluded that while the BUMED Instructions contained some mandatory language, they did not contain "specific mandatory instructions for how to achieve a clean water supply that removed any discretion from the part of those responsible for the water supply at Camp Lejeune." 263 F. Supp. 3d at 1351. The Court concluded that "[t]he question is not whether Camp Lejeune was under a directive to provide a clean water supply; the question is whether those responsible for the required clean water supply had any discretion in the manner in which that supply was to be achieved." *Id.* at 1350.

Here, Plaintiff's response fails to point to any provision mandating a specific course of conduct

that government employees were compelled to follow. Plaintiff relies on the holding in *Jones,* 691 F. Supp. 2d 639, 643 (E.D.N.C. 2010), that the 1972 BUMED Instruction provided specific requirements for chemical concentrations of chlorinated hydrocarbons in drinking water, and it included Camp Lejeune contaminants, TCE and PCE. Pl. Resp. at 11. Pointing to allegations in his complaint regarding detection of contamination in Camp Lejeune lab testing and at the Camp Lejeune Rifle Range in the early 1980s, Plaintiff claims that the government was on notice of TCE and PCE contamination at Camp Lejeune prior to Baby Boy Washington's birth. *Id.* at 12-17. However, under this Court's holding in *Jones*, the BUMED Instruction does not require particular action *unless and until* there is notice of an exceedance with respect to a specific chemical concentration in drinking water. *See* Dkt. 21-3 at 4-6.

Plaintiff offered no evidence showing that the government was aware of any TCE or PCE chemical concentrations in excess of the BUMED standard for chlorinated hydrocarbons at Camp Lejeune prior to Baby Boy Washington's birth. Even considering TCE and PCE as chlorinated hydrocarbons, the exhibits attached to Plaintiff's complaint show that the first awareness of specific concentrations of these chemicals in drinking water wells was a notice to the base commander in August 1982, after Baby Boy Washington's birth. *See* Dkt. 21-5, 21-6, 21-7, 21-8.

Plaintiff also continues to mistakenly rely on Base Order 5100.13b without regard to the lack of specificity in this provision. Base Order 5100.13b did not impose any relevant specific and mandatory requirements on the Marine Corps at Camp Lejeune. The Order merely required base personnel to take steps to avoid improper disposal practices and called for periodic inspections of contaminants in stock. Under the Order, the Marine Corps were to determine serviceability; dispose of material determined to be deteriorated or in hazardous condition; and place said material in a designated disposal area. *See* Dkt. 21-4. The *Camp Lejeune MDL* Court concluded: "The Base Order also does not specify any particular contaminants and gives base officials discretion to determine whether an item is salable or

7

serviceable and where it should be disposed. There are no specific or mandatory methods of disposal required in the Base Order." 263 F. Supp. 3d at 1351. Therefore, Plaintiff has not shown that any specific and mandatory provision constrained the government's discretion.

### B. Plaintiff Has Not Demonstrated that any Challenged Governmental Conduct is Not Susceptible to Policy Analysis.

Because the Plaintiff has not alleged that the United States violated a specific and mandatory provision, the Plaintiff can establish jurisdiction only by showing that the challenged government conduct is not susceptible to policy analysis. However, Plaintiff has made no such showing.

Here, any decisions that the Navy or Marine Corps might have made regarding the Camp Lejeune water supply were susceptible to defense and security considerations, among other policies. *See generally Snyder v. United States*, 504 F. Supp. 2d 136, 141-43 (S.D. Miss. 2007) (holding that decisions by the government regarding chemicals in the water supply at Camp Lejeune were the kinds of policy choices the discretionary function exception was designed to shield); *Sanchez v. United States*, 671 F.3d 86, 103 (1st Cir. 2012) ("The Supreme Court has made clear that federal courts are constrained not to interfere with the exercise of such discretion by any agency, and that is particularly so in the running of military operations.").

Relevant policy considerations that the military at Camp Lejeune had to balance regarding its water supply included: the need to maintain sufficient water services to operate the base at all times; the need to maintain military equipment for training and deployment; the prioritization of limited financial resources to meet military objectives; the monitoring of drinking water for regulated substances; and overall compliance with the Department of Defense's mission. *See In re Camp Lejeune*, 263 F. Supp. 3d at 1354 ("the direction of resources on a military base . . . is a classic illustration of the kind of balancing of national security and economic policies that should be protected by the discretionary function exception").

Plaintiff fails to cite any cases showing that the conduct he challenges is not susceptible to policy analysis. He also fails to address cited case law recognizing that operational decisions made by the military implicate important policy considerations. Very recently, in *Tate v. Camp Lejeune*, No. 4:19-cv-91-D, 2019 WL 7373699 (E.D.N.C. Dec. 30, 2019) (Judge Dever), this Court ruled that a Plaintiff who claimed exposure to contaminated Camp Lejeune water between 1984 and 1987 could not overcome the discretionary function exception. *Id.* at *2. The Court held that "[d]ecisions involving use and disposal of chemicals, together with related decisions regarding environmental investigation and remediation, require consideration of multiple policy factors, including 'national security, resource constraints, and environmental impact.'" *Id.* (quoting *Pieper v. United States*, 713 F. App'x 137, 140 (4th Cir. 2017) (per curiam) (unpublished) (quotation omitted) and citing *Oxendine v. United States*, No. 3:08-4036-CMC-PJG, 2009 WL 3757517, *5 (D.S.C. Nov. 9, 2009) (unpublished) and *In re Camp Lejeune*, 263 F. Supp. 3d at 1341-57).

## CONCLUSION

For these reasons, the United States' Motion to Dismiss should be granted because the court lacks subject-matter jurisdiction over Plaintiff's FTCA claims.

DATED this 3rd day of February, 2020.

        Respectfully submitted,

        ROBERT J. HIGDON, JR.
        United States Attorney

        J. PATRICK GLYNN
        Director, Torts Branch
        Environmental Tort Litigation Section

        BRIDGET BAILEY LIPSCOMB
        Assistant Director, Torts Branch
        Environmental Tort Litigation Section

        ADAM BAIN
        Senior Trial Attorney, Torts Branch
        Environmental Tort Litigation Section

        GEOFFREY C. COOK
        Trial Attorney, Torts Branch
        Environmental Torts Litigation Section

        ALBERT LAI
        Trial Attorney, Torts Branch
        Environmental Torts Section

        */s/ LaCresha A. Johnson*
        LACRESHA A. JOHNSON
        Trial Attorney, Torts Branch
        Environmental Tort Litigation Section
        United States Department of Justice
        P.O. Box 340, Ben Franklin Station
        Washington, D.C. 20044
        E-mail: lacresha.a.johnson@usdoj.gov
        Telephone: (202) 616-4447
        Fax: (202) 616-4473

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2020, a copy of the foregoing document was served on all counsel of record by operation of the court's electronic filing system and can be accessed through that system.

>  _/s/ LaCresha A. Johnson_
>  LACRESHA A. JOHNSON

11

Case 7:19-cv-00112-BO   Document 34   Filed 02/03/20   Page 11 of 11