1               UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF NORTH CAROLINA

3                        )
    KENNETH WASHINGTON,         )
4                        )  DOCKET NO. 7:19-CV-112-BO
              Plaintiff,   )
5                        )
    vs.                   )
6                        )
    DEPARTMENT OF THE NAVY, ET  )
7    AL.,                 )
                        )
8              Defendants.  )

9

10       TRANSCRIPT OF VIDEOCONFERENCE MOTION HEARING
        BEFORE MAGISTRATE JUDGE ROBERT T. NUMBERS, II
11         WEDNESDAY, APRIL 21, 2021; 1:33 PM
           FAYETTEVILLE, NORTH CAROLINA

12  FOR THE PLAINTIFF:
       Ward and Smith, P.A.
13      By:  Jordan M. Spanner, Esq.
       751 Corporate Center Drive
14      Suite 300
       Raleigh, NC 27607

15      Bell Legal Group
16      By:  J. Edward Bell, III, Esq.
       219 Ridge Street
17      Georgetown, SC 29440

18
    FOR THE DEFENDANTS:
19      U.S. Department of Justice
       By:  J. Adam Bain, AUSA
20      P.O. Box 340
       Ben Franklin Station
21      Washington, DC 20044

22      U.S. Department of Justice
       By:  Haroon Anwar, AUSA
23         LaCresha A. Johnson, AUSA
       175 N Street, NE
24      Washington, DC 20002

25  Audio Operator:           CLERK'S OFFICE PERSONNEL

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

eScribers, LLC
7227 N. 16th Street
Suite 207
Phoenix, AZ 85020
973-406-2250
www.escribers.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service.

1

**I N D E X**

2     RULINGS:                                              PAGE   LINE
      Motion for protective order is granted.          21     16
3     Deposition will not go forward.
      Parties are ordered to meet and confer within    21     22
4     the next two weeks.
      Discovery period is extended sixty days.         22     15
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

1          P R O C E E D I N G S

2          THE COURT:  Good afternoon, everyone.

3          UNIDENTIFIED SPEAKER:  Good afternoon, Your Honor.

4          THE COURT:  We are here in Washington v. Department

5    of the Navy, 7:19-CV-112, for a hearing on an emergency motion

6    for a protective order.  I'd like to ask counsel to identify

7    themselves, beginning with counsel for the plaintiff.

8          MR. BELL:  Good afternoon, Your Honor.  My name is

9    Edward Bell for the plaintiff.

10         MS. SPANNER:  Good afternoon, Your Honor.  This is

11   Jordan Spanner of Ward and Smith, here as local counsel for

12   the plaintiff.

13         MR. ANWAR:  Good afternoon, Your Honor. Haroon Anwar

14   here with my colleagues (audio interference) for the United

15   States (audio interference) introduce themselves.

16         MR. BAIN:  Good afternoon, Your Honor.

17         THE COURT:  All right, I believe we have Mr. -- --

18   yeah.

19         So I've reviewed the filings by the parties.  And I

20   want to start off with some questions for plaintiff's counsel.

21         As I understand it, you are seeking this deposition

22   because you haven't received all the documents you believe are

23   responsive to your discovery requests.  And my initial

24   question is:  why is this a 30(b)(6) deposition and not a

25   motion to compel?

1      I'm sorry, Mr. Bell, I can't hear -- or Mr. Bell, I
2  can't hear you.

3      MR. BELL:  I'm sorry.  That's a very good question,
4  Your Honor.  Normally, we would file a motion for -- to
5  compel.  In this instance, we have possibly thirty years of
6  (audio interference) at least tens of thousands if not
7  millions of documents.

8      So when the Government objected to our initial
9  request, which was basically turn over all your documents, we
10  said okay, let's find out what documents they have.  We may
11  not need every database they have.  So we sent out a 30(b)(6)
12  with a 30(b)(5) (audio interference).

13      We sent a 30(b)(6) without the (audio interference),
14  I'm sorry -- so that an individual could describe for us what
15  they have, what are the databases, and then at that time, we
16  would have the ability to go to the Court and say this is the
17  database connected -- is involved and (indiscernible) or this
18  is the database that tracks the amount of chemicals in the
19  water or whether there is (indiscernible) values in that
20  particular time period.

21      And so not having the knowledge of what's in the
22  databases, we don't really know how to file a motion to compel
23  without them asking, Mr. Bell, aren't you asking for the
24  world; and the answer is, the only way we can address the
25  nature and content of the documents is for the Government to

1    tell us, in a general sense, what do they have.

2              THE COURT:  Well --

3              MR. BELL:  So that's why we've done it this way.

4              THE COURT:  Have you asked that through an

5    interrogatory?

6              MR. BELL:  Well, we've asked that in our amend -- no,

7    sir, we haven't asked it that way.

8              THE COURT:  Why not?

9              MR. BELL:  That's a good question, Judge.  I think

10   the 30(b)(6) is just as good, if not better, because then we

11   can actually ask somebody about the documents a little bit

12   more than a crafted answer by the party, about what they have.

13             THE COURT:  Well, you've said in your papers that you

14   know of databases that they have not searched.  So if you know

15   of those databases, what is the need for the 30(b)(6) and why

16   can't you just tell them what databases you want them to look

17   in?

18             MR. BELL:  Judge, we are aware of the huge database

19   that was discovered by the ATSDR during their investigation.

20   Initially, they investigated and was allowed to have access

21   and then it was cut off by the Government.  There was some

22   negotiations through Congress and different people, and they

23   eventually were allowed to access that database.

24             I have talked to one of the investigators, and he has

25   indicated that they did get a good number of documents, but

1   there were a lot more.  And we don't know what's in the

2   database.  We don't know whether it's everything.  We don't

3   know whether they're categorized, how they're actually filed.

4   And in cases involving this number of documents, we think this

5   is a good way to get started.

6            THE COURT:  Well, what is the name of that database?

7            MR. BELL:  We've always called it the secret

8   database, Judge, because that's the way I've heard of it the

9   last ten, fifteen years.

10           THE COURT:  Well, I mean, I -- that's not a very

11  helpful definition for the Government to try to find it.

12           MR. BELL:  Well --

13           THE COURT:  So what would you ask the Government to

14  search for?

15           MR. BELL:  (Audio interference), and the Government

16  has opposed that.  And they haven't named it either.  All we

17  know is they have a database.

18           THE COURT:  Well, so your request right now, under

19  30(b)(6), as it reads, asks them to search the -- for them to

20  prepare someone to testify databases maintained by the

21  entirety of the federal government over a period of possibly

22  seventy years, with no guidance.  Why is that not facially

23  over-broad?

24           MR. BELL:  Well, I don't think it's seventy years,

25  Judge.  I think it's thirty years.  I think that's

1    (indiscernible).  I do think, and we've been told, that the
2    Government has compiled the documents that relate only to the
3    Camp Lejeune water issue, not Camp Lejeune marine combat
4    issues.  We're looking for the contaminated water issues at
5    Camp Lejeune.

6            And it's my understanding that Camp Lejeune has
7    compiled a large number of documents that relate to the
8    studies, to the treatment, to the discovery, to the types of
9    chemicals, to the effect of the chemicals.

10           In other words, ATSDR was able to get access and have
11   enough access to where they could come up with government
12   papers and epidemiological studies that relate to certain
13   maladies or ill effects from the exposure to the chemicals.

14           We don't know whether we have gotten all of those
15   documents.  We don't think ATSDR has (indiscernible) all of
16   them.  We think the access to them -- we don't think that
17   they've obtained all of them.  And if they did, the Government
18   should say so.  They should say, look, ATSDR has gotten all of
19   them.  We don't have another database.  Or we do have a
20   database and it's described as this.

21           And it's not something that's very hard for them to
22   produce.  They have individuals, Judge, that know what they
23   have by way of documents.  Otherwise, they couldn't have
24   answered or objected to my request for production, early on.
25           Remember, Judge, we asked for a request for

Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 8 of 31

1  production back in -- I have it in my pleadings. But I think

2  that (audio interference) if not better than an interrogatory.

3  And they objected, basically, to everything we asked for that

4  hadn't been previously produced in the ATSDR documents.

5       THE COURT: So why is the 30(b)(6) deposition not

6  just focused on ATSDR?

7       MR. BELL: Well, they think there are documents other

8  than what ATSDR got.

9       THE COURT: Right, but what you've told me is that

10 ATSDR did some investigation, and they were essentially

11 roadblocked at some point, or not given documents. So why not

12 being there, and then build out from there. Find out who

13 ATSDR says they -- what documents they didn't get or were

14 refused or things like that?

15      MR. BELL: With all due respect, Judge, I think the

16 simplest and easiest way is to have the government say what

17 they've got. I understand what you're saying. And that's a

18 strategic question. But isn't it easier to say to the

19 Government employee, please tell me what kind of database you

20 would have. The content is basically (audio interference)

21 what you have in that database. And what is it? Is the

22 database searchable?

23      It's not an unusual question. In fact, quite

24 frankly, it's one that's used quite widely to -- so that our

25 request is not overly broad, is not too intrusive, and that

1   doesn't -- I mean, counsel has claimed that they have (audio

2   interference) privileged documents.  We aren't asking for

3   those.  All we would ask for would be, of course, a privilege

4   log but --

5              THE COURT:  If --

6              MR. BELL:  -- it's a -- it's a very good tool, Judge,

7   for us to get at the answer question.

8              THE COURT:  Yes.  Well, they need to prepare someone,

9   though, based upon the topic you've provided.  And it's very

10  broad.  It covers the entire federal government.  Your

11  pleadings indicate the water contamination began in the 1950s,

12  which was seventy years ago.  The way it's written now is

13  exceedingly broad.  And I don't -- I frankly don't know how

14  someone could, in good faith, prepare someone to testify on

15  all of these things, given the breadth.  I mean, the

16  Government indicates that six or seven agencies might have

17  documents, and each one of those is going to be different --

18  but it's not even limited to that, according to your 30(b)(6).

19  It's limited to the entire federal government, and any

20  documents that have ever been created.

21             So I mean, that seems very, very broad, when you're

22  going back over seventy years and searching the entirety of

23  the federal government.

24             MR. BELL:  I hear what you're saying.  But if I were

25  to ask an interrogatory the same question, I have the same

Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 10 of 31

1  problem.  I have the same issue.  (Indiscernible) supply

2  (indiscernible) what we've learned, was stopped somewhere

3  around 1985 or 1987.  I don't have the exact date.  And new

4  water was brought in, and clean water was brought in.

5        So the range which I don't think anyone would contest

6  here today, would be sometime in the mid fifties onward.  It's

7  our understanding, based on the documents we have reviewed,

8  that discovery (indiscernible) was made in the early sixties.

9  We may be off a little bit.  But that's what we understand.

10        And until 1985 or thereabouts, these chemicals were

11  allowed to be kept in the water and individuals were exposed

12  to these chemicals.

13        If, in fact, there's several agencies that have these

14  documents, that's (indiscernible) say these are the seven

15  agencies.  You need to go see them.  But at least give us some

16  answer as to what documents do you have and not allow the

17  Government to decide what is relevant and what is not.

18        THE COURT:  Now, I know there's a website for this

19  litigation -- well, for the Camp Lejeune water contamination

20  matters, and there are, it appears, many documents on that

21  website.  Is that -- you contend that's not a sufficient set

22  of documents; it's an incomplete set of documents?

23        MR. BELL:  Judge, I don't think it's complete.  I

24  don't think the Government would (indiscernible) themselves on

25  that website.  This is a speculation on my part.  But it's

1  pretty much -- pretty much guaranteed that those are not all

2  the documents.

3          Maybe the Government could tell us.  Are all those --

4  are all of the documents on the website, are they a complete

5  set of documents?  And if we knew that we would

6  (indiscernible), and we could stop this hearing.

7          THE COURT:  Well --

8          MR. BELL:  But I don't think it is.

9          THE COURT:  Well, I mean, you could confirm that

10  through a request for admission, which is much less costly

11  than a Rule 30 -- and involved than a Rule 30(b)(6)

12  deposition.  I --

13          MR. BELL:  Judge, if I -- if I ask that, and I say

14  are all of them here, and they say no, and then I say well,

15  tell me which ones aren't there, and they (indiscernible).  I

16  mean, Judge, I hear what you're saying, but you're -- this is

17  not something that is just that simple that we can go through

18  an alternative which (indiscernible), when the alternative, at

19  least in this litigation, we -- under the Rules, we should be

20  able to say tell me what you have in a general sense.

21          And I'm not asking the Department of Justice to tell

22  me what EPA has, but what you -- what the Department of Navy,

23  who is a defendant, has compiled.

24          And Judge, if they have a warehouse full of documents

25  and they say, look, we've got a warehouse, we don't have an

1   index or we have a warehouse, we have an index, we have a

2   database, in fact we have ten databases, that is very -- that

3   is the beginning of what -- of a system by which we could be

4   able to determine where is the knowledge, where is the

5   information.

6          And I think it's the best way for us to do it.

7          THE COURT:  Well, you say it's limited to the

8   Department of the Navy, but it's not.  This is United

9   States -- it's Washington v. United States.  And so you've

10  asked for the entire United States Government to respond to

11  this Rule 30(b)(6).

12         But let me ask the United States, why -- effectively,

13  why can you not just tell the defendant -- I'm sorry, the

14  plaintiff, where the documents are and what the universe of

15  documents that relate to this matter is?  This is an MDL.

16  This can't be the first time you all have fought through this

17  issue.  And it appears work has been done in the past.  So why

18  isn't this an easy answer that can be provided in writing as

19  to what the universe of documents is?

20         MR. ANWAR:  Sure, Your Honor.  And if the Court --

21  I'll be making our presentation, Haroon Anwar.

22         So to respond directly to the first point on

23  documents, Your Honor, plaintiff's response raised an issue of

24  documents suggesting our document production was somehow

25  inadequate at the time that they raised it in response to our

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 13 of 31

1    motion for a protective order.

2            And to be clear, we've produced extensive information

3    in this case.  We've produced nearly 3,000 pages worth of

4    total documents.  In April 2020 we produced a set of documents

5    (indiscernible) that was roughly 8,500 pages.  And also in

6    that same production we included another set of documents from

7    (indiscernible) that was nearly 8,000 documents.

8            And then in response to the plaintiff's most recent

9    request for production, which they served in late October,

10   about a week before the expert disclosure deadline, we

11   produced over 10,000 documents from ATSDR.

12           This is the majority of information that was, in

13   fact, produced in the MDL, the Camp Lejeune MDL.  We've had it

14   for some time.  And this should also be familiar to them,

15   because (audio interference) in the MDL.  So the suggestion

16   that we somehow failed to produce documents, this is the first

17   that we've heard of it.

18           We've also directed plaintiff to the extensive

19   information available on the (indiscernible) website and the

20   EPA's website, including the administrative record related to

21   water contamination at Camp Lejeune.

22           And to be clear, our responses in this document

23   production, to the most recent set of requests made by

24   plaintiff, this -- we produced those documents and the

25   responses in the December/January time frame -- December 2020

1  and January 2021.

2          In that time, we've never received a deficiency

3  letter.  We've never received any (indiscernible) letter.  No

4  request was made to be conferred to us.  And if there was

5  really an issue with our document production, surely plaintiff

6  would have filed a motion to compel prior to this hearing in

7  the litigation.

8          Simply put, from our perspective, Your Honor, the

9  document issue is a distraction.  And this is a distraction

10  from the fact that this 30(b)(6) deposition is inappropriate.

11          Plaintiff -- we have a -- as we refer to in our

12  papers, we request the 30(b)(6) deposition be quashed for a

13  variety of reasons, but particularly given the posture of the

14  case and the late date of the case, with less than one month

15  before the discovery cutoff.

16          And in particular, the deposition is futile, as the

17  plaintiff failed to meet its expert disclosure deadline.  It

18  failed to support its findings with expert evidence.  And the

19  law is clear, and plaintiff's conceded in a prior filing, that

20  without expert evidence on probation, he's unable to meet the

21  elements of this case and the case can't move forward.  And --

22          THE COURT:  Well, let me -- let me just stop you --

23  let me just stop you there.  I mean, I understand your

24  argument on that, and I understand why you make that argument.

25          I take it the plaintiff's going to depose your

1    experts at some point.  And while I don't know the facts of

2    this case, it's certainly possible that a -- the right direct

3    examination could potentially create material issues of fact

4    regarding what's going on in this case, or perhaps somehow

5    through that avenue, even if Judge Boyle opposed my earlier

6    order, they can still obtain evidence from your experts that

7    will require this case to go forward.

8              So I don't fully close the door on the plaintiff's

9    chances of prevailing here.  I certainly understand your

10   argument, but I don't think that it's quite as completely

11   bleak as you paint the picture.

12             So I mean, generally -- and I appreciate the

13   documents that you have produced.  But I guess the question is

14   not how many documents have you produced, but have you

15   produced all the documents that are responsive to the

16   defendant's (sic) requests that are in your possession,

17   custody, and control.

18             And so what is your position on that issue?

19             MR. ANWAR:  We've -- we've certainly -- we've

20   certainly produced the majority of the documents, and the

21   documents that we believe are responsive to plaintiff's

22   request.  The specific document requests that were made in the

23   case.

24             We also made an attempt to update those document

25   productions, as well.  And frankly, after plaintiff failed to

 1   disclose and expert witness in the case, it raised the

 2   question about proportionality in terms of producing

 3   extensive -- I guess, scouring every federal agency to

 4   produce -- look for additional documents.

 5          We produced extensive information already.  Plaintiff

 6   has failed to produce an expert witness in the case for his

 7   claims.

 8          So I think our position is we've produced the vast

 9   majority of the documents that are out there.  It is possible

10   that there could be other documents, since our last

11   production.  We made the effort to move forward with searching

12   for those documents.  But between the posture of the case and

13   frankly just the difficulty in tracking down, sort of, some of

14   those documents in this COVID environment, we can't say that

15   every single document out might have been produced, but we do

16   think the vast majority has been produced, responsive to the

17   plaintiff's requests, what they asked for.  And -- yeah.

18          THE COURT:  Well, you say the vast majority --

19          MR. ANWAR:  Your Honor --

20          THE COURT:  -- you say the vast majority.  What do

21   you understand to be outstanding that is nonprivileged and

22   relevant?

23          MR. ANWAR:  Your Honor, we're in the process of

24   working to confirm, and we have been, for -- since the

25   document requests were made, just to make sure there hasn't

1 been any additional documentation that came about since the

2 majority of the information we produced in the MDL was

3 produced and was produced in this case as well.

4          And so our agencies are working on that, as I sit

5 here today, telling what may or may not exist.  But that is

6 something we certainly have been working on.

7          And plaintiff has, I think, what we would consider

8 certainly, the critical mass of everything -- just about

9 everything that was produced in the MDL, for sure.

10          MR. BELL:  Your Honor, may I respond to that, if it

11 please the Court?

12          THE COURT:  Yes.

13          MR. BELL:  The question you asked of counsel is what

14 do you have, in other words, do you have any databases, do you

15 have anything, and counsel hasn't answered.  And if they have

16 a database, just say look, we've got a database.  It's

17 circular.

18          We're trying to figure out how we can -- you guys

19 know in litigation involving years and years and years, what

20 an engineer said on this date in a report -- a Government

21 report, may not look to you to be relevant, but it may very

22 well be relevant to us in proving the amount of

23 contamination -- all kinds of things could help the

24 plaintiff's case.

25          On the other hand, we've recognized, when we had our

 1    meet-and-confer, that this is a limited cases for a certain
 2    period of time.  And we talked about that.  And we
 3    (indiscernible) filed six of our requests and narrowed it down
 4    to just one.

 5          But counsel must remember that we started this
 6    process back in October of last year, trying to get these
 7    documents.  We were told these documents were produced.  Yes,
 8    we've been searching through them.  And you can see on some of
 9    the documents they, in essence, refer to other things that we
10    can't find.

11          And so yes, we think there are relevant documents out
12    there.  And it would be -- Your Honor, obviously if it's so
13    burdensome they can't answer the questions, the lawyers have
14    some knowledge, right now, that a 30(b)(6) witness should be
15    able to answer some general questions.

16          Do you have databases set up by the Government, yes
17    or no?  That's a simple question.  Are these documents related
18    to Camp Lejeune water contamination?  Yes.  We are
19    (indiscernible) from EPA or whoever's involved, but we have a
20    database.  We have three databases.

21          It's not a long, hard deposition.  If they want it to
22    be done by Zoom, it can be done in an hour, hour-and-a-half.
23    It's not a lot of burden on anyone.  It's just a simple please
24    explain where you got these documents, what database did you
25    use, how did you compile them?

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 19 of 31

1        Clearly this is not a single event.  This is a long-
2   term event that they've got lots and lots of documents.  So
3   it's, in my mind, the least intrusive way to get to the next
4   step.

5        MR. ANWAR:  Your Honor, if I may respond?

6        Just to reiterate, the document production of the
7   Government request that Mr. Bell was referring to were made a
8   week before their expert disclosure deadline passed.  And
9   certainly if plaintiff wanted to ask those questions to us,
10  they put both those questions to us.  We've met and conferred
11  multiple times at this point.  None of these issues were
12  raised at the meet-and-confer.

13       We've asked for an explanation as to why they were
14  seeking this particular 30(b)(6) notice.  And we were told
15  that they removed five of the six prior overly broad topics,
16  despite the fact that this topic is overly broad as well, and
17  that's sufficient from their perspective.

18       We were certainly open to having that conversation.
19  And plaintiff has extensive information that we've produced.
20  There is nothing precluding plaintiff from looking through
21  that information and identifying what they feel like they need
22  additional information from during this period of time.

23       Instead, we're sitting here talking sort of
24  (indiscernible) documents, additional documents that may or
25  may not exist.

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 20 of 31

1      And again, I think understanding -- respecting sort

2  of what you said on this issue, Your Honor.  But that's sort

3  of not (indiscernible) that plaintiff still hasn't -- failed

4  to produce an expert in the case.  And from our perspective,

5  the amount of discovery that plaintiff is seeking a month

6  before the close of discovery, at this juncture of the case,

7  with no expert disclosure or claim, is not proportionate in

8  the likely event that it's far outweighed by the burden to the

9  United States of going through this process.

10      MR. BELL:  Counsel -- Your Honor, I think it's a

11  little disingenuous to sit here and say we've waited till the

12  last thirty days.

13      When we started this process in October, the first

14  30(b)(6) was in February.  So that's not fair.

15      THE COURT:  All right.  Well, here's what we're going

16  to do, counsel.  I'm going to grant the motion for a

17  protective order and prohibit the deposition from going

18  forward based on the current notice of deposition.

19      I find it to be overbroad and not proportional to the

20  needs of the case, given the scope of the 30(b)(6) notice, as

21  currently worded.

22      However, the parties are ordered to meet and confer

23  within the next two weeks to discuss outstanding issues that

24  the plaintiff believes exist regarding the production of

25  documents, such as if there are documents that are referenced

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 21 of 31

1    that they're unable to find, and the parties have a meet and

2    confer to try to resolve those issues.

3         Additionally, the parties shall discuss whether other

4    databases exist that have not been searched.  And the

5    Government should make a good-faith effort to find an answer

6    to that question.

7         The plaintiffs may certainly serve an interrogatory

8    on this particular topic.  And if the Government were to

9    stonewall or otherwise not provide the -- make a good-faith

10   effort to provide responsive information, then a renewed

11   30(b)(6) deposition may be appropriate in that case.  But at

12   this time, there are other methods of discovery, both formal

13   and informal, that can address these matters, in a way that is

14   much more speedy and inexpensive.

15        In order to allow this to take place, I'll be

16   extending the discovery period a total of sixty additional

17   days, to allow these meet-and-confers to occur and for

18   document production to take place and for further assessment

19   of what is necessary in terms of discovery in this case.

20        If there's a motion to compel that needs to be filed,

21   regarding the Government's failure to produce documents or any

22   party's failure to comply with their discovery obligations,

23   that should be done promptly, so that the briefing can be

24   completed and the Court can rule on it in a timely manner.

25        Any party shall bear their own costs.

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 22 of 31

1              All right.

2              MR. ANWAR:  Thank you, Your Honor.

3              THE COURT:  That'll be my order on that.

4              And if there is a need for the Court to get involved

5    or if it would be helpful for the Court to be involved in

6    further discussions, please let me know, and we can reconvene

7    to address any issues.  My goal here is to make sure that the

8    discovery obligations are met in a way that is proportional to

9    the needs of the case and done in a timely manner.

10             So I'm --

11             MR. ANWAR:  Your Honor --

12             THE COURT:  Yes, sir?

13             MR. ANWAR:  I'm sorry.  If I may just raise one

14   additional issue with you?  It hasn't reached a point of

15   motion practice yet, but on this topic of expert discovery,

16   plaintiff certainly has requested a deposition of our experts,

17   and we've been -- we've provided dates for those experts in

18   May.

19             We've asked for confirmation of that from plaintiff's

20   counsel.  Plaintiff (indiscernible) sort of, the time for the

21   expert's deposition as required under the rules.  And we've

22   heard nothing.  We were hoping we could get confirmation or

23   clarity on that either from Mr. Bell or guidance from Your

24   Honor, because we don't want to (indiscernible) fighting over

25   those depositions.

Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 23 of 31

1          THE COURT:  Mr. Bell, what do you have to say about

2    that?

3          MR. BELL:  Your Honor, we (indiscernible) respond to

4    the rule, and we take their deposition, their expert, we'll

5    have a (indiscernible).

6          THE COURT:  Good.  I'm glad we could get that

7    resolved, as well.

8          MR. ANWAR:  Thank you, Your Honor.

9          THE COURT:  All right, counsel.  I'll enter a brief

10   written order memorializing today's hearing and my ruling and

11   then things will go forward from there.

12          As I mentioned, if I can be of further assistance,

13   just let my case manager know, and we'll reconvene.  Until

14   then, we'll be in recess.  Thank you, counsel.

15          IN UNISON:  Thank you, Your Honor.

16                    (Court is adjourned)

17                    * * * * *

18

19

20

21

22

23

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 24 of 31

1                     CERTIFICATE OF TRANSCRIBER

2

3         I, Penina Wolicki, court-approved transcriber, in and

4  for the United States District Court for the Eastern District

5  of North Carolina, do hereby certify that pursuant to Section

6  753, Title 28, United States Code, that the foregoing is a

7  true and correct transcript from the official electronic sound

8  recording of the proceedings held in the above-entitled matter

9  and that the transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12                 Dated this 9th day of May, 2021.

13

14

15                 /s/
                    _____

16                 PENINA WOLICKI, CET-569

17                 COURT-APPROVED TRANSCRIBER

18

19

20

21

22

23

24

25

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

## A

**ability (1)**
5:16
**able (4)**
8:10;12:20;13:4;
19:15
**access (5)**
6:20,23;8:10,11,16
**according (1)**
10:18
**actually (2)**
6:11;7:3
**additional (6)**
17:4;18:1;20:22,
24;22:16;23:14
**Additionally (1)**
22:3
**address (3)**
5:24;22:13;23:7
**adjourned (1)**
24:16
**administrative (1)**
14:20
**admission (1)**
12:10
**afternoon (6)**
4:2,3,8,10,13,16
**again (1)**
21:1
**agencies (4)**
10:16;11:13,15;
18:4
**agency (1)**
17:3
**ago (1)**
10:12
**allow (3)**
11:16;22:15,17
**allowed (3)**
6:20,23;11:11
**alternative (2)**
12:18,18
**always (1)**
7:7
**amend (1)**
6:6
**amount (3)**
5:18;18:22;21:5
**answered (2)**
8:24;18:15
**ANWAR (12)**
4:13,13;13:20,21;
16:19;17:19,23;
20:5;23:2,11,13;24:8
**appears (2)**
11:20;13:17
**appreciate (1)**
16:12
**appropriate (1)**
22:11
**April (1)**

## 14:4

**argument (3)**
15:24,24;16:10
**around (1)**
11:3
**assessment (1)**
22:18
**assistance (1)**
24:12
**ATSDR (10)**
6:19;8:10,15,18;
9:4,6,8,10,13;14:11
**attempt (1)**
16:24
**audio (10)**
4:14,15;5:6,12,13;
7:15;9:2,20;10:1;
14:15
**available (1)**
14:19
**avenue (1)**
16:5
**aware (1)**
6:18

## B

**back (3)**
9:1;10:22;19:6
**BAIN (1)**
4:16
**based (3)**
10:9;11:7;21:18
**basically (3)**
5:9;9:3,20
**bear (1)**
22:25
**began (1)**
10:11
**beginning (2)**
4:7;13:3
**believes (1)**
21:24
**BELL (28)**
4:8,9;5:1,1,3,23;
6:3,6,9,18;7:7,12,15,
24;9:7,15;10:6,24;
11:23;12:8,13;18:10,
13;20:7;21:10;
23:23;24:1,3
**best (1)**
13:6
**better (2)**
6:10;9:2
**bit (2)**
6:11;11:9
**bleak (1)**
16:11
**both (2)**
20:10;22:12
**Boyle (1)**
16:5
**breadth (1)**

## 10:15

**brief (1)**
24:9
**briefing (1)**
22:23
**broad (3)**
9:25;10:10,13,21;
20:15,16
**brought (2)**
11:4,4
**build (1)**
9:12
**burden (2)**
19:23;21:8
**burdensome (1)**
19:13

## C

**called (1)**
7:7
**came (1)**
18:1
**Camp (8)**
8:3,3,5,6;11:19;
14:13,21;19:18
**can (14)**
5:24;6:11;12:17;
13:13,18;16:6;
18:18;19:8,22;22:13,
23,24;23:6;24:12
**case (21)**
14:3;15:14,14,21,
21;16:2,4,7,23;17:1,
6,12;18:3,24;21:4,6,
20;22:11,19;23:9;
24:13
**cases (2)**
7:4;19:1
**categorized (1)**
7:3
**certain (2)**
8:12;19:1
**certainly (10)**
16:2,9,19,20;18:6,
8;20:9,18;22:7;
23:16
**chances (1)**
16:9
**chemicals (6)**
5:18;8:9,9,13;
11:10,12
**circular (1)**
18:17
**claim (1)**
21:7
**claimed (1)**
10:1
**claims (1)**
17:7
**clarity (1)**
23:23
**clean (1)**

## 11:4

**clear (3)**
14:2,22;15:19
**Clearly (1)**
20:1
**close (2)**
16:8;21:6
**colleagues (1)**
4:14
**combat (1)**
8:3
**compel (5)**
4:25;5:5,22;15:6;
22:20
**compile (1)**
19:25
**compiled (3)**
8:2,7;12:23
**complete (2)**
11:23;12:4
**completed (1)**
22:24
**completely (1)**
16:10
**comply (1)**
22:22
**conceded (1)**
15:19
**confer (2)**
21:22;22:2
**conferred (2)**
15:4;20:10
**confirm (2)**
12:9;17:24
**confirmation (2)**
23:19,22
**Congress (1)**
6:22
**connected (1)**
5:17
**consider (1)**
18:7
**contaminated (1)**
8:4
**contamination (5)**
10:11;11:19;
14:21;18:23;19:18
**contend (1)**
11:21
**content (2)**
5:25;9:20
**contest (1)**
11:5
**control (1)**
16:17
**conversation (1)**
20:18
**costly (1)**
12:10
**costs (1)**
22:25
**counsel (13)**
4:6,7,11,20;10:1;

## 18:13,15;19:5;21:10, 16;23:20;24:9,14

**course (1)**
10:3
**COURT (36)**
4:2,4,17;5:16;6:2,
4,8,13;7:6,10,13,18;
9:5,9;10:5,8;11:18;
12:7,9;13:7,20;
15:22;17:18,20;
18:11,12;21:15;
22:24;23:3,4,5,12;
24:1,6,9,16
**covers (1)**
10:10
**COVID (1)**
17:14
**crafted (1)**
6:12
**create (1)**
16:3
**created (1)**
10:20
**critical (1)**
18:8
**current (1)**
21:18
**currently (1)**
21:21
**custody (1)**
16:17
**cut (1)**
6:21
**cutoff (1)**
15:15

## D

**database (19)**
5:11,17,18;6:18,
23;7:2,6,8;17:8,19,
20;9:19,21,22;13:2;
18:16,16;19:20,24
**databases (11)**
5:15,22;6:14,15,
16;7:20,13;2;18:14;
19:16,20;22:4
**date (3)**
11:3;15:14;18:20
**dates (1)**
23:17
**days (2)**
21:12;22:17
**deadline (3)**
14:10;15:17;20:8
**December (1)**
14:25
**December/January (1)**
14:25
**decide (1)**
11:17
**defendant (2)**
12:23;13:13

Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 26 of 31

**defendant's (1)**
16:16
**deficiency (1)**
15:2
**definition (1)**
7:11
**Department (4)**
4:4;12:21,22;13:8
**depose (1)**
15:25
**deposition (14)**
4:21,24;9:5;12:12;
15:10,12,16;19:21;
21:17,18;22:11;
23:16,21;24:4
**depositions (1)**
23:25
**describe (1)**
5:14
**described (1)**
8:20
**despite (1)**
20:16
**determine (1)**
13:4
**different (2)**
6:22;10:17
**difficulty (1)**
17:13
**direct (1)**
16:2
**directed (1)**
14:18
**directly (1)**
13:22
**disclose (1)**
17:1
**disclosure (4)**
14:10;15:17;20:8;
21:7
**discovered (1)**
6:19
**discovery (12)**
4:23;8:8;11:8;
15:15;21:5,6;22:12,
16,19,22;23:8,15
**discuss (2)**
21:23;22:3
**discussions (1)**
23:6
**disingenuous (1)**
21:11
**distraction (2)**
15:9,9
**document (10)**
13:24;14:22;15:5,
9;16:22,24;17:15,25;
20:6;22:18
**documentation (1)**
18:1
**documents (63)**
4:22;5:7,9,10,25;
6:11,25;7:4;8:2,7,15,

23;9:4,7,11,13;10:2,
17,20;11:7,14,16,20,
22,22;12:2,4,5,24;
13:14,15,19,23,24;
14:4,4,6,7,11,16,24;
16:13,14,15,20,21;
17:4,9,10,12,14;
19:7,7,9,11,17,24;
20:2,24,24;21:25,25;
22:21
**done (6)**
6:3;13:17;19:22,
22;22:23;23:9
**door (1)**
16:8
**down (2)**
17:13;19:3
**due (1)**
9:15
**during (2)**
6:19;20:22

## E

**earlier (1)**
16:5
**early (2)**
8:24;11:8
**easier (1)**
9:18
**easiest (1)**
9:16
**easy (1)**
13:18
**Edward (1)**
4:9
**effect (1)**
8:9
**effectively (1)**
13:12
**effects (1)**
8:13
**effort (3)**
17:11;22:5,10
**either (2)**
7:16;23:23
**elements (1)**
15:21
**emergency (1)**
4:5
**employee (1)**
9:19
**engineer (1)**
18:20
**enough (1)**
8:11
**enter (1)**
24:9
**entire (3)**
10:10,19;13:10
**entirety (2)**
7:21;10:22
**environment (1)**

17:14
**EPA (2)**
12:22;19:19
**EPA's (1)**
14:20
**epidemiological (1)**
8:12
**essence (1)**
19:9
**essentially (1)**
9:10
**even (2)**
10:18;16:5
**event (3)**
20:1,2;21:8
**eventually (1)**
6:23
**everyone (1)**
4:2
**evidence (3)**
15:18,20;16:6
**exact (1)**
11:3
**examination (1)**
16:3
**exceedingly (1)**
10:13
**exist (4)**
18:5;20:25;21:24;
22:4
**expert (11)**
14:10;15:17,18,
20;17:1,6;20:8;21:4,
7;23:15;24:4
**experts (4)**
16:1,6;23:16,17
**expert's (1)**
23:21
**explain (1)**
19:24
**explanation (1)**
20:13
**exposed (1)**
11:11
**exposure (1)**
8:13
**extending (1)**
22:16
**extensive (5)**
14:2,18;17:3,5;
20:19

## F

**facially (1)**
7:22
**fact (7)**
9:23;11:13;13:2;
14:13;15:10;16:3;
20:16
**facts (1)**
16:1
**failed (6)**

14:16;15:17,18;
16:25;17:6;21:3
**failure (2)**
22:21,22
**fair (1)**
21:14
**faith (1)**
10:14
**familiar (1)**
14:14
**far (1)**
21:8
**February (1)**
21:14
**federal (5)**
7:21;10:10,19,23;
17:3
**feel (1)**
20:21
**fifteen (1)**
7:9
**fifties (1)**
11:6
**fighting (1)**
23:24
**figure (1)**
18:18
**file (2)**
5:4,22
**filed (4)**
7:3;15:6;19:3;
22:20
**filing (1)**
15:19
**filings (1)**
4:19
**find (7)**
5:10;7:11;9:12;
19:10;21:19;22:1,5
**findings (1)**
15:18
**first (4)**
13:16,22;14:16;
21:13
**five (1)**
20:15
**focused (1)**
9:6
**formal (1)**
22:12
**forward (5)**
15:21;16:7;17:11;
21:18;24:11
**fought (1)**
13:16
**frame (1)**
14:25
**frankly (4)**
9:24;10:13;16:25;
17:13
**full (1)**
12:24
**fully (1)**

16:8
**further (3)**
22:18;23:6;24:12
**futile (1)**
15:16

## G

**general (3)**
6:1;12:20;19:15
**generally (1)**
16:12
**given (3)**
9:11;10:15;15:13;
21:20
**glad (1)**
24:6
**goal (1)**
23:7
**Good (14)**
4:2,3,8,10,13,16;
5:3;6:9,10,25;7:5;
10:6,14;24:6
**good-faith (2)**
22:5,9
**Government (25)**
5:8,25;6:21;7:11,
13,15,21;8:2,11,17;
9:16,19;10:10,16,19,
23;11:17,24;12:3;
13:10;18:20;19:16;
20:7;22:5,8
**Government's (1)**
22:21
**grant (1)**
21:16
**guaranteed (1)**
12:1
**guess (2)**
16:13;17:3
**guidance (2)**
7:22;23:23
**guys (1)**
18:18

## H

**hand (1)**
18:25
**hard (2)**
8:21;19:21
**Haroon (2)**
4:13;13:21
**hear (4)**
5:1,2;10:24;12:16
**heard (3)**
7:8;14:17;23:22
**hearing (4)**
4:5;12:6;15:6;
24:10
**help (1)**
18:23
**helpful (2)**

Min-U-Script®
eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net
(2) defendant's - helpful

Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 27 of 31

7:11;23:5

**here's (1)**
21:15
**Honor (22)**
4:3,8,10,13,16;5:4;
13:20,23;15:8;17:19,
23;18:10;19:12;
20:5;21:2,10;23:2,
11,24;24:3,8,15
**hoping (1)**
23:22
**hour (1)**
19:22
**hour-and-a-half (1)**
19:22
**huge (1)**
6:18

**I**

**identify (1)**
4:6
**identifying (1)**
20:21
**ill (1)**
8:13
**inadequate (1)**
13:25
**inappropriate (1)**
15:10
**included (1)**
14:6
**including (1)**
14:20
**incomplete (1)**
11:22
**index (2)**
13:1,1
**indicate (1)**
10:11
**indicated (1)**
6:25
**indicates (1)**
10:16
**indiscernible (24)**
5:17,19;8:1,15;
11:1,2,8,14,24;12:6,
15,18;14:5,7,19;
15:3;19:3,19;20:24;
21:3;23:20,24;24:3,5
**individual (1)**
5:14
**individuals (2)**
8:22;11:11
**inexpensive (1)**
22:14
**informal (1)**
22:13
**information (10)**
13:5;14:2,12,19;
17:5;18:2;20:19,21,
22;22:10
**initial (2)**

4:23;5:8
**Initially (1)**
6:20
**instance (1)**
5:5
**Instead (1)**
20:23
**interference (10)**
4:14,15;5:6,12,13;
7:15;9:2,20;10:2;
14:15
**interrogatory (4)**
6:5;9:2;10:25;22:7
**introduce (1)**
4:15
**intrusive (2)**
9:25;20:3
**investigated (1)**
6:20
**investigation (2)**
6:19;9:10
**investigators (1)**
6:24
**involved (5)**
5:17;12:11;19:19;
23:4,5
**involving (2)**
7:4;18:19
**issue (9)**
8:3;11:1;13:17,23;
15:5,9;16:18;21:2;
23:14
**issues (7)**
8:4,4;16:3;20:11;
21:23;22:2;23:7

**J**

**January (1)**
15:1
**Jordan (1)**
4:11
**Judge (13)**
6:9,18;7:8,25;
8:22,25;9:15;10:6;
11:23;12:13,16,24;
16:5
**juncture (1)**
21:6
**Justice (1)**
12:21

**K**

**kept (1)**
11:11
**kind (1)**
9:19
**kinds (1)**
18:23
**knew (1)**
12:5
**knowledge (3)**

5:21;13:4;19:14

**L**

**large (1)**
8:7
**last (4)**
7:9;17:10;19:6;
21:12
**late (2)**
14:9;15:14
**law (1)**
15:19
**lawyers (1)**
19:13
**learned (1)**
11:2
**least (4)**
5:6;11:15;12:19;
20:3
**Lejeune (8)**
8:3,3,5,6;11:19;
14:13,21;19:18
**less (2)**
12:10;15:14
**letter (2)**
15:3,3
**likely (1)**
21:8
**limited (4)**
10:18,19;13:7;
19:1
**litigation (4)**
11:19;12:19;15:7;
18:19
**little (3)**
6:11;11:9;21:11
**local (1)**
4:11
**log (1)**
10:4
**long (1)**
19:21
**long- (1)**
20:1
**look (6)**
6:16;8:18;12:25;
17:4;18:16,21
**looking (2)**
8:4;20:20
**lot (2)**
7:1;19:23
**lots (2)**
20:2,2

**M**

**maintained (1)**
7:20
**majority (7)**
14:12;16:20;17:9,
16,18,20;18:2
**making (1)**

13:21
**maladies (1)**
8:13
**manager (1)**
24:13
**manner (2)**
22:24;23:9
**many (2)**
11:20;16:14
**marine (1)**
8:3
**mass (1)**
18:8
**material (1)**
16:3
**matter (1)**
13:15
**matters (2)**
11:20;22:13
**may (14)**
5:10;11:9;18:5,5,
10,21,21;20:5,24,25;
22:7,11;23:13,18
**Maybe (1)**
12:3
**MDL (6)**
13:15;14:13,13,
15;18:2,9
**mean (8)**
7:10;10:1,15,21;
12:9,16;15:23;16:12
**meet (4)**
15:17,20;21:22;
22:1
**meet-and-confer (2)**
19:1;20:12
**meet-and-confers (1)**
22:17
**memorializing (1)**
24:10
**mentioned (1)**
24:12
**met (2)**
20:10;23:8
**methods (1)**
22:12
**mid (1)**
11:6
**might (2)**
10:16;17:15
**millions (1)**
5:7
**mind (1)**
20:3
**month (2)**
15:14;21:5
**more (3)**
6:12;7:1;22:14
**most (2)**
14:8,23
**motion (9)**
4:5,25;5:4,22;
14:1;15:6;21:16;

22:20;23:15
**move (2)**
15:21;17:11
**much (4)**
12:1,1,10;22:14
**multiple (1)**
20:11
**must (1)**
19:5

**N**

**name (2)**
4:8;7:6
**named (1)**
7:16
**narrowed (1)**
19:3
**nature (1)**
5:25
**Navy (3)**
4:5;12:22;13:8
**nearly (2)**
14:3,7
**necessary (1)**
22:19
**need (6)**
5:11;6:15;10:8;
11:15;20:21;23:4
**needs (3)**
21:20;22:20;23:9
**negotiations (1)**
6:22
**new (1)**
11:3
**next (2)**
20:3;21:23
**None (1)**
20:11
**nonprivileged (1)**
17:21
**Normally (1)**
5:4
**notice (3)**
20:14;21:18,20
**number (2)**
6:25;7:4;8:7

**O**

**objected (3)**
5:8;8:24;9:3
**obligations (2)**
22:22;23:8
**obtain (1)**
16:6
**obtained (1)**
8:17
**obviously (1)**
19:12
**occur (1)**
22:17
**October (3)**

Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 28 of 31

14:9;19:6;21:13

**off (3)**
4:20;6:21;11:9
**one (6)**
6:24;9:24;10:17;
15:14;19:4;23:13
**ones (1)**
12:15
**only (2)**
5:24;8:2
**onward (1)**
11:6
**open (1)**
20:18
**opposed (2)**
7:16;16:5
**order (7)**
4:6;14:1;16:6;
21:17;22:15;23:3;
24:10
**ordered (1)**
21:22
**Otherwise (2)**
8:23;22:9
**out (8)**
5:10,11;9:12,12;
17:9,15;18:18;19:11
**outstanding (2)**
17:21;21:23
**outweighed (1)**
21:8
**over (5)**
5:9;7:21;10:22;
14:11;23:24
**overbroad (1)**
21:19
**over-broad (1)**
7:23
**overly (3)**
9:25;20:15,16
**own (1)**
22:25

**P**

**pages (2)**
14:3,5
**paint (1)**
16:11
**papers (3)**
6:13;8:12;15:12
**part (1)**
11:25
**particular (4)**
5:20;15:16;20:14;
22:8
**particularly (1)**
15:13
**parties (4)**
4:19;21:22;22:1,3
**party (2)**
6:12;22:25
**party's (1)**

22:22

**passed (1)**
20:8
**past (1)**
13:17
**people (1)**
6:22
**perhaps (1)**
16:4
**period (5)**
5:20;7:21;19:2;
20:22;22:16
**perspective (3)**
15:8;20:17;21:4
**picture (1)**
16:11
**place (2)**
22:15,18
**plaintiff (20)**
4:7,9,12;13:14;
14:18,24;15:5,11,17;
16:25;17:5;18:7;
20:9,19,20;21:3,5,
24;23:16,20
**plaintiffs (1)**
22:7
**plaintiff's (10)**
4:20;13:23;14:8;
15:19,25;16:8,21;
17:17;18:24;23:19
**pleadings (2)**
9:1;10:11
**please (4)**
9:19;18:11;19:23;
23:6
**point (5)**
9:11;13:22;16:1;
20:11;23:14
**position (2)**
16:18;17:8
**possession (1)**
16:16
**possible (2)**
16:2;17:9
**possibly (2)**
5:5;7:21
**posture (2)**
15:13;17:12
**potentially (1)**
16:3
**practice (1)**
23:15
**precluding (1)**
20:20
**prepare (3)**
7:20;10:8,14
**presentation (1)**
13:21
**pretty (2)**
12:1,1
**prevailing (1)**
16:9
**previously (1)**

9:4

**prior (3)**
15:6,19;20:15
**privilege (1)**
10:3
**privileged (1)**
10:2
**probation (1)**
15:20
**problem (1)**
11:1
**process (4)**
17:23;19:6;21:9,
13
**produce (6)**
8:22;14:16;17:4,6;
21:4;22:21
**produced (21)**
9:4;14:2,3,4,11,13,
24;16:13,14,15,20;
17:5,8,15,16;18:2,3,
3,9;19:7;20:19
**producing (1)**
17:2
**production (11)**
8:24;9:1;13:24;
14:6,9,23;15:5;
17:11;20:6;21:24;
22:18
**productions (1)**
16:25
**prohibit (1)**
21:17
**promptly (1)**
22:23
**proportional (2)**
21:19;23:8
**proportionality (1)**
17:2
**proportionate (1)**
21:7
**protective (3)**
4:6;14:1;21:17
**provide (2)**
22:9,10
**provided (3)**
10:9;13:18;23:17
**proving (1)**
18:22
**put (2)**
15:8;20:10

**Q**

**quashed (1)**
15:12
**quite (3)**
9:23,24;16:10

**R**

**raise (1)**
23:13

**raised (4)**
13:23,25;17:1;
20:12
**range (1)**
11:5
**reached (1)**
23:14
**reads (1)**
7:19
**really (2)**
5:22;15:5
**reasons (1)**
15:13
**received (3)**
4:22;15:2,3
**recent (2)**
14:8,23
**recess (1)**
24:14
**recognized (1)**
18:25
**reconvene (2)**
23:6;24:13
**record (1)**
14:20
**refer (2)**
15:11;19:9
**referenced (1)**
21:25
**referring (1)**
20:7
**refused (1)**
9:14
**regarding (3)**
16:4;21:24;22:21
**reiterate (1)**
20:6
**relate (4)**
8:2,7,12;13:15
**related (2)**
14:20;19:17
**relevant (5)**
11:17;17:22;
18:21,22;19:11
**Remember (2)**
8:25;19:5
**removed (1)**
20:15
**renewed (1)**
22:10
**report (2)**
18:20,21
**request (11)**
5:9;7:18;8:24,25;
9:25;12:10;14:9;
15:4,12;16:22;20:7
**requested (1)**
23:16
**requests (7)**
4:23;14:23;16:16,
22;17:17,25;19:3
**require (1)**
16:7

**required (1)**
23:21
**resolve (1)**
22:2
**resolved (1)**
24:7
**respect (1)**
9:15
**respecting (1)**
21:1
**respond (5)**
13:10,22;18:10;
20:5;24:3
**response (2)**
13:23,25;14:8
**responses (2)**
14:22,25
**responsive (4)**
4:23;16:15,21;
17:16;22:10
**reviewed (2)**
4:19;11:7
**right (8)**
4:17;7:18;9:9;
16:2;19:14;21:15;
23:1;24:9
**roadblocked (1)**
9:11
**roughly (1)**
14:5
**Rule (5)**
12:11,11;13:11;
22:24;24:4
**Rules (2)**
12:19;23:21
**ruling (1)**
24:10

**S**

**same (4)**
10:25,25;11:1;
14:6
**saying (3)**
9:17;10:24;12:16
**scope (1)**
21:20
**scouring (1)**
17:3
**search (2)**
7:14,19
**searchable (1)**
9:22
**searched (2)**
6:14;22:4
**searching (3)**
10:22;17:11;19:8
**secret (1)**
7:7
**seeking (3)**
4:21;20:14;21:5
**seems (1)**
10:21

Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 29 of 31

**sense (2)**
6:1;12:20
**sent (2)**
5:11,13
**serve (1)**
22:7
**served (1)**
14:9
**set (7)**
11:21,22;12:5;
14:4,6,23;19:16
**seven (2)**
10:16;11:14
**seventy (4)**
7:22,24;10:12,22
**several (1)**
11:13
**shall (2)**
22:3,25
**sic (1)**
16:16
**simple (3)**
12:17;19:17,23
**simplest (1)**
9:16
**Simply (1)**
15:8
**single (2)**
17:15;20:1
**sit (2)**
18:4;21:11
**sitting (1)**
20:23
**six (3)**
10:16;19:3;20:15
**sixties (1)**
11:8
**sixty (1)**
22:16
**Smith (1)**
4:11
**somebody (1)**
6:11
**somehow (3)**
13:24;14:16;16:4
**someone (4)**
7:20;10:8,14,14
**sometime (1)**
11:6
**somewhere (1)**
11:2
**sorry (5)**
5:1,3,14;13:13;
23:13
**sort (5)**
17:13;20:23;21:1,
2;23:20
**SPANNER (2)**
4:10,11
**SPEAKER (1)**
4:3
**specific (1)**
16:22

**speculation (1)**
11:25
**speedy (1)**
22:14
**start (1)**
4:20
**started (3)**
7:5;19:5;21:13
**States (6)**
4:15;13:9,9,10,12;
21:9
**step (1)**
20:4
**still (2)**
16:6;21:3
**stonewall (1)**
22:9
**stop (3)**
12:6;15:22,23
**stopped (1)**
11:2
**strategic (1)**
9:18
**studies (2)**
8:8,12
**sufficient (2)**
11:21;20:17
**suggesting (1)**
13:24
**suggestion (1)**
14:15
**supply (1)**
11:1
**support (1)**
15:18
**Sure (4)**
13:20;17:25;18:9;
23:7
**surely (1)**
15:5
**system (1)**
13:3

**T**

**talked (2)**
6:24;19:2
**talking (1)**
20:23
**telling (1)**
18:5
**ten (2)**
7:9;13:2
**tens (1)**
5:6
**term (1)**
20:2
**terms (2)**
17:2;22:19
**testify (2)**
7:20;10:14
**That'll (1)**
23:3

**thereabouts (1)**
11:10
**thirty (3)**
5:5;7:25;21:12
**though (1)**
10:9
**thousands (1)**
5:6
**three (1)**
19:20
**till (1)**
21:11
**timely (2)**
22:24;23:9
**times (1)**
20:11
**today (2)**
11:6;18:5
**today's (1)**
24:10
**told (4)**
8:1;9:9;19:7;20:14
**tool (1)**
10:6
**topic (4)**
10:9;20:16;22:8;
23:15
**topics (1)**
20:15
**total (2)**
14:4;22:16
**tracking (1)**
17:13
**tracks (1)**
5:18
**treatment (1)**
8:8
**try (2)**
7:11;22:2
**trying (2)**
18:18;19:6
**turn (1)**
5:9
**two (1)**
21:23
**types (1)**
8:8

**U**

**unable (2)**
15:20;22:1
**under (3)**
7:18;12:19;23:21
**UNIDENTIFIED (1)**
4:3
**UNISON (1)**
24:15
**United (6)**
4:14;13:8,9,10,12;
21:9
**universe (2)**
13:14,19

**unusual (1)**
9:23
**up (2)**
8:11;19:16
**update (1)**
16:24
**upon (1)**
10:9
**use (1)**
19:25
**used (1)**
9:24

**V**

**values (1)**
5:19
**variety (1)**
15:13
**vast (4)**
17:8,16,18,20

**W**

**waited (1)**
21:11
**Ward (1)**
4:11
**warehouse (3)**
12:24,25;13:1
**Washington (2)**
4:4;13:9
**water (10)**
5:19;8:3,4;10:11;
11:4,4,11,19;14:21;
19:18
**way (12)**
5:24;6:3,7;7:5,8;
8:23;9:16;10:12;
13:6;20:3;22:13;
23:8
**website (6)**
11:18,21,25;12:4;
14:19,20
**week (2)**
14:10;20:8
**weeks (1)**
21:23
**what's (3)**
5:21;7:1;16:4
**whoever's (1)**
19:19
**widely (1)**
9:24
**within (1)**
21:23
**without (3)**
5:13,23;15:20
**witness (3)**
17:1,6;19:14
**worded (1)**
21:21
**words (2)**

**8:10;18:14**
**work (1)**
13:17
**working (3)**
17:24;18:4,6
**world (1)**
5:24
**worth (1)**
14:3
**writing (1)**
13:18
**written (2)**
10:12;24:10

**Y**

**year (1)**
19:6
**years (10)**
5:5;7:9,22,24,25;
10:12,22;18:19,19,
19

**Z**

**Zoom (1)**
19:22

**1**

**10,000 (1)**
14:11
**1950s (1)**
10:11
**1985 (2)**
11:3,10
**1987 (1)**
11:3

**2**

**2020 (2)**
14:4,25
**2021 (1)**
15:1

**3**

**3,000 (1)**
14:3
**30 (1)**
12:11
**30b5 (1)**
5:12
**30b6 (17)**
4:24;5:11,13;6:10,
15;7:19;9:5;10:18;
12:11;13:11;15:10,
12;19:14;20:14;
21:14,20;22:11

**7**

Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 30 of 31

**7:19-CV-112 (1)**
  4:5

**8**

**8,000 (1)**
  14:7
**8,500 (1)**
  14:5

Case 7:19-cv-00112-BO   Document 72   Filed 05/11/21   Page 31 of 31